**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:15-cv-24565**

TRACFONE WIRELESS, INC.,

     *Plaintiff,*

v.

SIMPLY WIRELESS, INC., a Virginia
corporation,  d/b/a SHOPCELLDEALS, and
SIMPLY WIRELESS OF MIAMI, INC. a
Florida corporation,

     *Defendants.*

_____/

**COMPLAINT FOR DAMAGES AND**
**INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff TracFone Wireless, Inc. ("TracFone"), a Delaware corporation, sues Defendants Simply Wireless, Inc., d/b/a SHOPCELLDEALS ("Shopcelldeals"), a Virginia corporation, and Simply Wireless, Inc. of Miami, a Florida corporation, (collectively referred to as "Defendants" or "Simply Wireless").

For more than eight (8) years, TracFone trusted Defendants to market and sell TracFone's products and services through various television and online sales channels, and TracFone incurred substantial costs to facilitate Defendants' acquisition of new TracFone customers by providing Defendants with free wireless airtime to be provided to new TracFone customers upon the purchase of new TracFone wireless handsets from Defendants.  Instead of using all of the free airtime as intended however, Defendants misappropriated  a significant portion of the free airtime and resold it for their own profit separately from the TracFone wireless handsets causing significant and irreparable harm to TracFone, its brand and its reputation.   Defendants have refused to stop their improper and unlawful conduct, leaving TracFone with no option but to file this action.

Pursuant to Fed. R. Civ. P. 3 and 8, TracFone states as follows:

1.      This is an action for damages, including punitive damages, and for injunctive relief arising out of Defendants' unlawful activities involving the unauthorized sale of TracFone prepaid airtime service ("TracFone Service"), and other violations of federal and state law (the "Improper Airtime Resale Business") and for their breach of a recent agreement with TracFone.

## PARTIES

2.      TracFone is a Delaware corporation that maintains its principal place of business in Miami-Dade County, Florida.

3.      Defendant Simply Wireless, Inc. is a Virginia corporation with its principal place of business at 8484 Westpark Drive, Suite 800, McLean, Virginia 22102.  Simply Wireless, Inc. sometimes does business under the name Shopcelldeals and operates several websites, including shopcelldeals.com.

4.      Defendant Simply Wireless of Miami, Inc. is a Florida corporation with its principal place of business at 28 SW 26th Road, Miami, Florida 33129.

5.      All conditions precedent to filing this action have been performed, waived, or excused.

6.      TracFone has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## JURISDICTION

7.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 because TracFone's claim for violations of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030 arises under federal law.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over TracFone's state law claims because those claims are so related to the federal claim that they form part of the same case or controversy.

2

8.     All TracFone prepaid airtime improperly sold by Defendants pursuant to their Improper Airtime Resale Business is purchased by TracFone within this District, TracFone negotiates and executes all agreements with respect to all prepaid airtime within this District, and all of the TracFone prepaid airtime is paid for by TracFone within this District.

9.     Defendants actions have caused substantial damage to TracFone within this District.

10.    Defendants are subject to the personal jurisdiction of this Court pursuant to the following Florida statutes: (i) section 48.193(1)(a)—because Defendants have operated, conducted, or engaged in or carried out a business venture in this state; (ii) section 48.193(1)(b)—because Defendants have committed various tortious acts within this State; (iii) section 48.193(1)(f)(1)—because Defendants have caused injury to persons within this State arising out of an act or omission by Defendants outside of this State while Defendants were engaged in solicitation of service activities within this state; and (iv) section 48.193(2)—because Defendants have engaged in substantial and not isolated activity within this State.

## VENUE

11.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b), because a substantial part of the events or omissions giving rise to the claim occurred in this District, the impact of Defendants' misconduct occurred in this District, a Defendant resides in this District, and Defendants are subject to the personal jurisdiction of this Court.

## BACKGROUND

12.    This is an action for damages and injunctive relief arising out of Defendants' improper business enterprise to profit from the improper resale of TracFone Service.

13.    TracFone Service is activated through the use of unique codes, known as personal identification numbers ("PINs"), found on the back of TracFone Airtime Service cards or

3

computer-generated when customers purchase TracFone Airtime Service over the phone or from any of the TracFone Brands through the web ("Airtime Service PINs").  Once a customer has acquired an Airtime Service PIN, the customer enters the information into a TracFone Brand mobile device to activate service or contacts customer service to do the same.

14.     Beginning on or around November 1, 2007, TracFone and Simply Wireless, Inc. entered into an agreement under which TracFone would supply Simply Wireless, Inc. with handsets to be sold on the Home Shopping Network (the "HSN/Simply Wireless Handset Program").

15.     TracFone continued to conduct business with Defendants through November, 2015, although subsequent agreements and modifications entered into by Defendants utilized Simply Wireless of Miami, Inc. rather than Simply Wireless, Inc. as the entity contracting with TracFone.  Over the nine (9) year period during which the Parties conducted business, the scope of the HSN/Simply Wireless Handset Program expanded to provide for Defendants to sell TracFone handsets through several marketing platforms in addition to the Home Shopping Network, including QVC, Amazon, eBay, Groupon, and others.

16.     Simply Wireless, Inc. has registered a trademark for "Shopcelldeals" with the United States Patent and Trademark Office, and does business as Shopcelldeals on eBay using the seller name "SHOPCELLDEALS" as well as on its website, www.shopcelldeals.com.

17.     Pursuant to the HSN/Simply Wireless Handset Program, along with each handset TracFone sold to Simply Wireless, it provided Airtime Service PINs containing a certain amount of prepaid airtime minutes to create a bundled product to market to customers through this Program (the "Handset/Airtime Bundles").

18.     Although TracFone typically sells its prepaid airtime minutes separately from its handsets, TracFone provided certain Airtime Service PINs to Simply Wireless free of charge

4

with the understanding that those particular Airtime Service PINs would only be used to load prepaid airtime onto the handsets purchased by targeted customers for the Program.

19.     The intent was that the bundled product would be an attractive product to market and sell to customers who bought electronic products that were marketed on television platforms such as HSN.

20.     The reason that TracFone provided free Airtime Service PINs to Simply Wireless was because by selling a new TracFone handset bundled with TracFone prepaid airtime, TracFone expected to obtain new customers.  TracFone sacrificed the initial airtime sale of the prepaid airtime minutes in exchange for the promise of obtaining many new TracFone customers through the HSN/Simply Wireless Handset Program who would then purchase TracFone Airtime Service to keep their devices active and continue as TracFone customers.

21.     However, instead of bundling all of these free Airtime Service PINs with TracFone handsets and marketing them to the designated customers, Defendants took a significant portion of the free Airtime Service PINs sacrificed by TracFone and re-sold them directly to customers for profit.

22.     This caused significant harm to TracFone because instead of including the prepaid minutes to a new customer bundled with a TracFone handset as intended by the parties' agreements, Defendants sold the prepaid airtime minutes to existing TracFone customers.  And because TracFone provided those prepaid airtime minutes to Simply Wireless free of charge, TracFone received no revenue from Defendants' sale of the Airtime Service PINs.

23.     Through their Improper Airtime Resale Business, Defendants earned a substantial profit by selling airtime for which they paid nothing to TracFone.

24.     Defendants continue to perpetrate their Improper Airtime Resale Business despite TracFone's demands to stop their illegal and improper conduct.

25.     Defendants' conduct is causing TracFone to suffer substantial pecuniary losses and has caused immediate and irreparable injury to TracFone.

### TRACFONE'S BUSINESS MODEL

26.     TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its service under the various TracFone Brands.

27.     TracFone's customers load TracFone Service into their TracFone Brand prepaid devices using codes and proprietary tools that electronically validate the Airtime Service PINs associated with the TracFone Service before loading it onto the TracFone Brand device, online, through TracFone's IVR (interactive voice response) system, or through a TracFone customer service representative who assists in validating and loading the TracFone Service to the TracFone Brand device.

28.     TracFone is considered a "Mobile Virtual Network Operator" or "MVNO" in the wireless industry.  TracFone is not a facilities-based wireless provider like AT&T, Verizon, T-Mobile or Sprint/Nextel.  Rather, TracFone contracts with facilities-based wireless providers to purchase airtime on their networks for use by TracFone's customers.

29.     If TracFone Service is improperly acquired and subsequently activated, TracFone is damaged because it was not compensated for the service being used, which TracFone has purchased from its carrier partners.

### DEFENDANTS' MISCONDUCT

30.     Over the last several years, as part of the HSN/Simply Wireless Handset Program, TracFone delivered hundreds of thousands of free Airtime Service PINs to Simply Wireless.

31.     Once in possession of the free Airtime Service PINs, instead of bundling them with TracFone Program handsets for customers as they were supposed to do, Simply Wireless

6

improperly separated the products and resold a significant percentage of the Airtime Service PINs directly to end user consumers for their own pecuniary gain.

32.     Specifically, over four hundred thousand of the Airtime Service PINs provided by TracFone to Simply Wireless were activated by end user consumers, and over one hundred thousand of those activated Airtime Service PINs were redeemed by end users for reactivations or redemptions not associated with the Program's acquisition of new customers or were used in phones sold by other unauthorized retailers, meaning that the Airtime Service PINs were not bundled with the TracFone handsets as agreed and were instead sold by Simply Wireless.

33.     TracFone has discovered that Simply Wireless improperly resells a certain quantity of TracFone's freely provided promotional bundle Airtime Service by advertising the service and then selling the PIN numbers directly to customers via eBay, Amazon, Groupon, and other channels.   Simply Wireless markets and sells the Airtime Service on eBay as seller "SHOPCELLDEALS" and also advertises Airtime Service at below market rates on its website shopcelldeals.com.   Acting as Shopcelldeals, Simply Wireless sells the Airtime Service PINs directly to end user consumers, and Shopcelldeals directly receives the benefit.

34.     By selling a significant portion of the Airtime Service PINs directly to existing TracFone customers as Shopcelldeals instead of bundling them with the TracFone handsets with the purpose of acquiring new TracFone customers, Defendants have been unjustly enriched by at least hundreds of thousands of dollars, and TracFone did not receive the revenue from the unauthorized resale of the free Airtime Service PINs it designated for the Program and it delivered to Defendants.

35.     TracFone cannot ascertain the exact amount of damage without an accounting from Simply Wireless identifying, among other things, the number of Airtime Service PINs improperly sold.

102836997.2

36.     TracFone has been proximately damaged by the Improper Airtime Resale Business and by Defendants' actions in furtherance thereof.

37.     For the last several months, TracFone and Defendants have engaged in discussions regarding Defendants' misconduct as described in detail herein.

38.     On or about October 27, 2015, TracFone provided Defendants with ninety (90) days' notice of its intention to terminate the business relationship, including all agreements and understandings, between the parties,

39.     On December 7, 2015, TracFone and Defendants entered into an agreement designed to govern their business relationship during the 90-day notice period (the "Transition Agreement").  A copy of the Transition Agreement is attached as **Exhibit A**.

40.     Under the Transition Agreement TracFone agreed to maintain the business relationship with Defendants during the interim transition period in exchange for certain promises and conditions agreed to by Defendants.

## SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

41.     Defendants' Improper Airtime Resale Business substantially harms TracFone because they are reselling TracFone's free Airtime Service to customers for their own financial gain and providing no revenue to TracFone for the sale of these items.

42.     Defendants' conduct has also caused TracFone to suffer a direct financial loss as a result of the hundreds of thousands of Airtime Service PINs given by TracFone to Simply Wireless for free that were not authorized for re-sale to end user consumers who otherwise would have purchased the corresponding prepaid airtime minutes directly from TracFone or from the major retailers selling approved TracFone's products.  Because TracFone provided those Airtime Service PINs to Simply Wireless free of charge, TracFone received no revenue from Defendants' unauthorized sale of the corresponding prepaid airtime minutes.

43.     Earlier this week, TracFone and Defendants entered into a Transition Agreement that was intended to orderly wind down TracFone's relationship with Defendants.  Defendants induced TracFone to make significant concessions to enter into this Transition Agreement in order to make sure that Defendants would be able to sell TracFone products on an important HSN show on December 9, 2015.

44.     In connection with the Transition Agreement, Defendants agreed to meet with TracFone to discuss various opens items between this parties.  Yet after the agreement was signed—and after TracFone provided its products to Defendants to facilitate the December 9, 2015 HSN show, Defendants deceitfully repudiated the agreement and said they would refuse to meet unless TracFone agreed in advance to certain conditions that were not part of the signed Transition Agreement.

45.     Defendants benefited by their dishonest conduct in fraudulently inducing TracFone to enter into the Transition Agreement earlier this week and it would be inequitable for Defendants to retain such benefits.

## CAUSES OF ACTION

### COUNT ONE

#### UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER
#### (IN VIOLATION OF 18 U.S.C. § 1030(A)(5)(C), THE COMPUTER FRAUD AND ABUSE ACT)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

46.     TracFone protects access to its computer network by allowing access only to certain authorized users including its call center representatives.

47.     TracFone protects access to its computer network by requiring codes and/or identifiers to in order to access the system.

9

48. TracFone protects access to its telecommunications network by requiring certain codes to activate and reset the TracFone Service or requiring validation and activation at the point of purchase by authorized retailers. The codes are known as Airtime Service PINs.

49. Defendants improperly resell TracFone's Airtime Service PINs to end users not contemplated by the parties' agreement instead of bundling the Airtime Service PINs with the TracFone handsets.

50. Defendants knowingly and without authorization, obtained access to TracFone's proprietary computer system. Defendants were not authorized to access the proprietary computer system in any way and knew that they were not authorized to access the protected computer system.

51. Alternatively, if Defendants were authorized to access TracFone's proprietary computer system, such access was limited by the agreements in place between TracFone and Defendants.

52. Defendants' conduct resulted in unauthorized devices accessing TracFone's protected telecommunications network. Alternatively, Defendants' conduct resulted in devices accessing TracFone's protected telecommunications network in such a manner that those devices exceeded their authorized access.

53. Defendants' conduct exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants improperly accessed TracFone's proprietary computer system and telecommunications network, and Defendant used such access to resell improperly acquired TracFone Airtime Service directly to customers. Defendant used the improperly obtained Airtime Service PINs to access TracFone's telecommunications network for profit.

54.    TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

55.    Defendants further their scheme by reselling the TracFone Service and falsely offering the prepaid Airtime to the public as authentic TracFone prepaid airtime, when, in fact, that Airtime was obtained under false pretenses.

56.    Defendants' activities substantially affect interstate commerce and communication in that the TracFone Service is trafficked over the Internet and throughout the United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

57.    Defendants' unauthorized access of TracFone's proprietary computer system and wireless telecommunications network has caused and will continue to cause TracFone to suffer injury, with "damages" and "losses"—as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

58.    With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' actions, as well as tracking down fraudulently sold TracFone Service.

59.    With respect to damage, by infiltrating the TracFone computer system and telecommunications network, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000. Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.

60.     Defendants' conduct is intentional, malicious, and willful, and continues to cause irreparable harm to TracFone.

61.     Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

62.     TracFone is entitled to the entry of an injunction enjoining Defendants from any further violations of the statute.

63.     Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

## COUNT TWO

### UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER WITH INTENT TO DEFRAUD
### (IN VIOLATION OF 18 U.S.C. § 1030(A)(4), THE COMPUTER FRAUD AND ABUSE ACT)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

64.     TracFone protects access to its computer network by allowing access only to certain authorized users including its call center representatives.

65.     TracFone protects access to its computer network by requiring codes and/or identifiers to in order to access the system.

66.     TracFone protects access to its telecommunications network by requiring certain codes to activate and reset the TracFone Service or requiring validation and activation at the point of purchase by authorized retailers.  The codes are known as Airtime Service PINs.

67.     Defendants improperly resell TracFone's Airtime Service PINs to end users not contemplated by the parties' agreement instead of bundling the Airtime Service PINs with the TracFone handsets.

68.     Defendants knowingly and with the intent to defraud, obtained access to TracFone's proprietary computer system.  Defendants were not authorized to access the proprietary computer system in any way and knew that they were not authorized to access the protected computer system.

69.     Further, Defendants' conduct results in unauthorized devices accessing TracFone's protected telecommunications network.

70.     Defendants' conduct exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants improperly accessed TracFone's proprietary computer system and telecommunications network, and Defendant used such access to resell improperly acquired TracFone Service directly to customers.  Defendant used the improperly obtained TracFone Service to access TracFone's telecommunications network for profit.

71.     TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

72.     Defendants further their scheme by reselling the TracFone Airtime Service and falsely offering the prepaid airtime to the public as authentic TracFone prepaid airtime.

73.     Defendants' activities substantially affect interstate commerce and communication in that the TracFone Service is trafficked over the Internet and throughout the

United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

74.     Defendants' unauthorized access of TracFone's proprietary computer system and wireless telecommunications network has caused and will continue to cause TracFone to suffer injury, with "damages" and "losses"—as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

75.     With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' actions, as well as tracking down fraudulently sold TracFone Service.

76.     With respect to damage, by infiltrating the TracFone computer system and telecommunications network, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.

77.     Defendants' conduct is intentional, malicious, and willful, and continues to cause irreparable harm to TracFone.

78.     Defendants' activities constitute unauthorized access with intent to defraud in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

79.     TracFone is entitled to the entry of an injunction enjoining Defendants from any further violations of the statute.

80.     Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief

because of the reasons identified above and because the conduct involves at least one of the factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

## COUNT THREE

### KNOWINGLY TRAFFICKING IN PASSWORD INFORMATION WITH INTENT TO DEFRAUD (IN VIOLATION OF 18 U.S.C. § 1030(A)(6), THE COMPUTER FRAUD AND ABUSE ACT)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

81.     TracFone protects access to its telecommunications network by requiring certain codes to activate and reset the TracFone Service.  The codes are in the form of Airtime Service PINs.  Airtime Service PINs are located on the reverse side of Airtime Cards and when a valid PIN is input into TracFone's proprietary authorization system, the airtime associated with that PIN is activated for use on TracFone's wireless network.

82.     The Airtime Service PINs constitute password information as contemplated under 18 U.S.C. § 1030(a)(6) of the Computer Fraud and Abuse Act.

83.     TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

84.     Pursuant to an agreement with TracFone, Defendants' received two sets of Airtime Cards, both of which contained the PINs necessary to authorize the Airtime associated with those PINs for service on TracFone's network.

85.     One set of PINs was given to Defendants' free of charge, as part of a product promotion whereby Defendants' sold TracFone telephones that came pre-authorized with Airtime Service.  As part of the promotion, Defendants were required to input the PINs that were

15

provided to them free of charge into TracFone's authorization system in order to apply the service to the phones sold as part of the promotion.

86.     Another set of PINs were purchased from TracFone for resale.  These PINs were associated with Airtime Cards that Defendants were, per the agreement with TracFone, supposed to sell directly to consumers, who would in turn activate the Airtime associated with those PINs.

87.     Instead of using the PINs that were provided free of charge as part of the promotional bundle, Defendants sold those PINs directly to consumers.

88.     Defendants knowingly sold the promotional PINs, which were provided by TracFone free of charge, to consumers.

89.     Indeed, Defendants' did so with the intent to defraud TracFone.  Defendants' diverted PINs that TracFone provided to them free of charge, which were intended to be part of the promotional bundle, to their other line of business, where the Airtime associated with those PINs was sold directly to consumers for profit.

90.     Thus, Defendants defrauded TracFone by obtaining free Airtime PINs under false pretenses, and then selling those PINs for profit.

91.     TracFone is entitled to the entry of an injunction enjoining Defendants from any further violations of the statute.

92.     Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

16

## COUNT FOUR

### UNJUST ENRICHMENT IN VIOLATION OF FLORIDA COMMON LAW
### (AIRTIME CARDS)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

93.     By improperly reselling TracFone prepaid airtime, Defendants obtained benefits from TracFone that have resulted in significant financial benefits to Defendants.

94.     Defendants acquired these benefits voluntarily and with full knowledge.

95.     Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain these benefits without paying TracFone the value of the benefits Defendants acquired.

## COUNT FIVE

### UNJUST ENRICHMENT IN VIOLATION OF FLORIDA COMMON LAW
### (DISGORGEMENT OF PROFITS FROM TRANSITION AGREEMENT)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

96.     TracFone conferred a benefit on Defendants by entering into the Transition Agreement in that TracFone agreed to maintain its business relationship with Defendants during the interim 90-day transition period in exchange for certain promises and concessions by Defendants.

97.     Defendants accepted the benefits of the Transition Agreement and enjoyed the profits from the sale of TracFone products during the interim transition period.

98.     Defendants accepted the benefits of the Transition Agreement and enjoyed the profits from the sale of TracFone products without ever intending to comply with their obligations under the Transition Agreement.

102836997.2

99.   Because Defendants have enjoyed the profits from the sale of TracFone products during the transition period under false pretenses, it would be inequitable and unjust to allow Defendants to retain those benefits.

100.   TracFone requests that Defendants profits from the sale of TracFone products be disgorged and paid to TracFone in light of the inequitable circumstances under which those profits were earned.

## COUNT SIX
### ACCOUNTING

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

101.   Between 2007 and 2015, the parties participated in extensive transactions as part of their agreement to sell handsets and airtime to targeted customers.

102.   TracFone provided hundreds of thousands of various Airtime Service PINs and handsets to Defendants.

103.   Defendants sold many of those TracFone Plans and handsets, but it is unclear how many were sold altogether, how many were improperly sold, and how many of TracFone's products are still in Defendants' possession.

104.   The damages due to TracFone from Defendants can only be ascertained by way of an accounting inquiry.

## COUNT SEVEN
### FRAUD IN THE INDUCEMENT IN VIOLATION OF FLORIDA COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

105.    For the last several months, TracFone and Defendants have engaged in discussions regarding Defendants' misconduct as described in detail herein.

106.    On or about October 27, 2015, TracFone provided Defendants with ninety (90) days' notice of its intention to terminate the business relationship, including all agreements and understandings, between the parties,

107.    On December 7, 2015, TracFone and Defendants entered into the Transition Agreement designed to govern their business relationship during the 90-day notice period.

108.    The Transition Agreement reflects a compromise between the parties.

109.    In exchange for TracFone's compromise to continue its business relationship with Defendants for the interim 90-day period, TracFone demanded, among other things, that Defendants agree to schedule a meeting with TracFone to discuss various outstanding issues.

110.    Defendants represented to TracFone that they were amenable to such a condition, and a contractual provision reflecting that agreement was drafted into the Transition Agreement.

111.    As such, a material provision of the Transition Agreement required TracFone and Defendants to schedule a meeting within ten (10) days of executing the Transition Agreement. The terms of that provision are as follows:

> The Parties agree to schedule a meeting at TracFone's headquarters within ten (10) calendar days of the date this agreement is executed to (a) discuss the requirements for completing any other QVC and HSN shows occurring prior to the termination date and (b) reconcile the accounts receivable and monies owed to each party and (c) other items on an agenda to be agreed to by the parties.

112.    Defendants' willingness to agree to such a meeting was a material condition to TracFone's acceptance of other terms of the Transition Agreement, including its compromise to continue its business relationship with Defendants during the interim transition period.

113.    On or about December 9, 2015, TracFone contacted Defendants and proposed dates and times to schedule the meeting agreed to in the Transition Agreement.

114.    That same day, Defendants' agent, Steven Quershi, informed TracFone that Defendants would not schedule the meeting until TracFone agreed to reinstate all prior agreements and understandings between TracFone and Defendants, on the same terms as those agreements and understandings existed prior to TracFone's decision to terminate its business relationship with Defendants.

115.    Defendants' knew or should have known that their statement that they were amenable to scheduling this meeting, and their decision to incorporate that material term into the parties' agreement, was false.

116.    Defendants intended for TracFone to rely on that statement when assenting to the Transition Agreement and entering into a compromise with Defendants.  Indeed, Defendants' goal was to maintain a business relationship with TracFone–a relationship that was very profitable for Defendant, especially in light of their misconduct.

117.    TracFone relied, to its detriment, on Defendants' false statement.  Defendants' agreement to schedule this meeting and discuss their prior misconduct was a material and important factor in TracFone's compromise to continue its business relationship with Defendants on an interim basis.

118.    TracFone's reliance on Defendants' statement was justified.

119.    Defendants' induced TracFone to continue the parties' business relationship on an interim basis by promising to engage in a formal discussion regarding TracFone's concerns over their prior misconduct.

120.    Defendants' conduct was willful and intentional, and was a calculated plan to induce TracFone into a continued business relationship under false pretenses.

121.    As a result of Defendants' material misrepresentation, TracFone has been damaged.

122.    Due to the egregious nature of Defendants' conduct, TracFone seeks judgment against Defendants for all damages allowable by law, including punitive damages.

<u>**PRAYER FOR RELIEF**</u>

Wherefore, TracFone respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of TracFone and against Defendants Simply Wireless, Inc. and Simply Wireless of Miami, Inc. as follows:

a.    awarding TracFone its compensatory, consequential, statutory, special, treble, and punitive damages including, without limitation, its lost profits, loss of goodwill, and damage to its reputation, as provided by law, together with pre and post-judgment interest;

b.    awarding to TracFone restitution of all money and property unlawfully and unfairly taken by Defendants through their unfair and unlawful conduct;

c.    awarding TracFone permanent injunctive relief against Defendants and enjoining Defendants from engaging in the unlawful practices described in this Complaint;

d.    awarding TracFone its reasonable attorneys' fees and costs of this action, as permitted by applicable rules and statutes;

e.    requiring Defendants to provide an accounting of (i) how many TracFone Airtime Service PINs Defendants sold, by specific PIN and customer; (ii) how many TracFone products Defendants still maintain in their possession; and (iii) the amounts of money received from customers for the unauthorized resale of the TracFone Airtime Service PINs; and

102836997.2

      f.      granting such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff TracFone hereby demands a trial by jury on all triable issues.

Dated:  December 11, 2015.          By: _Aaron S. Weiss_

                      Aaron S. Weiss (FL Bar #48813)
                      Email:  aweiss@carltonfields.com
                      Carlton Fields Jorden Burt, P.A
                      100 Southeast Second Street, Suite 4200
                      Miami, Florida  33131
                      Telephone No.  (305) 530-0050
                      Facsimile No.   (305) 530-0055

                      James B. Baldinger (FL Bar # 869899)
                      Email: jbaldinger@carltonfields.com
                      Carlton Fields Jorden Burt, P.A
                      525 Okeechobee Boulevard, Suite 1200
                      West Palm Beach, Florida 33401
                      Telephone No.  (561) 659-7070
                      Facsimile No.   (561) 659-7368

                      *Attorneys for Plaintiff TracFone Wireless, Inc.*

102836997.2