**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:15-cv-24565-MORENO/O'SULLIVAN**

TRACFONE WIRELESS, INC.,

     *Plaintiff,*

v.

SIMPLY WIRELESS, INC., a Virginia
corporation, d/b/a SHOPCELLDEALS, and
SIMPLY WIRELESS OF MIAMI, INC. a
Florida corporation,

     *Defendants*.

_____/

**AMENDED COMPLAINT FOR DAMAGES AND
<u>INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL</u>**

Plaintiff TracFone Wireless, Inc. ("TracFone"), a Delaware corporation, sues Defendants Simply Wireless, Inc., d/b/a SHOPCELLDEALS ("Simply Wireless (Virginia)"), a Virginia corporation, and Simply Wireless of Miami, Inc., a Florida corporation ("Simply Wireless of Miami") (collectively referred to as "Defendants"). Pursuant to Fed. R. Civ. P. 3, 8, and 15(a)(1)(B), TracFone files this Amended Complaint and states as follows:

1.     This is an action for damages, including punitive damages, and for injunctive relief arising out of Defendants' unlawful activities involving the unauthorized sale of TracFone prepaid airtime service ("TracFone Service"), and other violations of federal and state law (the "Improper Airtime Resale Business") and for their breach of a recent agreement with TracFone.

<u>**PARTIES**</u>

2.     TracFone is a Delaware corporation that maintains its principal place of business in Miami-Dade County, Florida.

3.     Defendant Simply Wireless, Inc. is a Virginia corporation with its principal place of business at 8484 Westpark Drive, Suite 800, McLean, Virginia 22102.  Simply Wireless, Inc.

103307865.2

sometimes does business under the name Shopcelldeals and operates several websites, including shopcelldeals.com.

4.     Defendant Simply Wireless of Miami, Inc. is a Florida corporation with its principal place of business at 28 SW 26th Road, Miami, Florida 33129.

5.     All conditions precedent to filing this action have been performed, waived, or excused.

6.     TracFone has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

<u>JURISDICTION</u>

7.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1338 because TracFone's claim for violations of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030 arises under federal law.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over TracFone's state law claims because those claims are so related to the federal claim that they form part of the same case or controversy.

8.     All TracFone prepaid airtime improperly sold by Defendants pursuant to their Improper Airtime Resale Business is purchased by TracFone within this District, TracFone negotiates and executes all agreements with respect to all prepaid airtime within this District, and all of the TracFone prepaid airtime is paid for by TracFone within this District.

9.     Defendants actions have caused substantial damage to TracFone within this District.

10.     Defendants are subject to the personal jurisdiction of this Court pursuant to the following Florida statutes: (i) section 48.193(1)(a)—because Defendants have operated, conducted, or engaged in or carried out a business venture in this state; (ii) section 48.193(1)(b)—because Defendants have committed various tortious acts within this State; (iii) section 48.193(1)(f)(1)—because Defendants have caused injury to persons within this State

2

arising out of an act or omission by Defendants outside of this State while Defendants were engaged in solicitation of service activities within this state; and (iv) section 48.193(2)—because Defendants have engaged in substantial and not isolated activity within this State.

<u>**VENUE**</u>

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b), because a substantial part of the events giving rise to the claim occurred in this District, the impact of Defendants' misconduct occurred in this District, a Defendant (Simply Wireless of Miami) resides in this District, and Defendants are subject to the personal jurisdiction of this Court.

<u>**BACKGROUND**</u>

12.     This is an action for damages and injunctive relief arising out of Defendants' improper business enterprise to profit from the improper resale of TracFone Service.

13.     TracFone Service is activated through the use of unique codes, known as personal identification numbers ("PINs"), found on the back of TracFone Airtime Service cards or computer-generated when customers purchase TracFone Airtime Service over the phone or from any of the TracFone Brands through the web ("Airtime Service PINs").  Once a customer has acquired an Airtime Service PIN, the customer enters the information into a TracFone Brand mobile device to activate service or contacts customer service to do the same.

14.     In or around November 1, 2007, Simply Wireless (Virginia) entered into a written agreement under which TracFone would supply Simply Wireless (Virginia) with handsets to be sold on the Home Shopping Network (the "HSN/Simply Wireless Handset Program").  A copy of the November 1, 2007 agreement between TracFone Wireless and Simply Wireless (Virginia) is attached as **Exhibit A**.  This agreement does not contain an arbitration clause.  Aside from the Transition Agreement, it is the only formal written agreement between TracFone and Simply Wireless (Virginia).

15.     TracFone continued to conduct business with Defendants through November, 2015, although subsequent written agreements and modifications were between TracFone and a company called Simply Wireless of Miami rather than Simply Wireless (Virginia).  However, there was no assignment of the rights and obligations under the November 1, 2007 from Simply Wireless (Virginia) to Simply Wireless of Miami.

16.     The first agreement between TracFone and Simply Wireless of Miami was executed on or about March 3, 2011 (the "March 2011 Agreement") and is attached as **Exhibit B**.

17.     On or about October 12, 2011, TracFone and Simply Wireless of Miami executed another agreement (the "Handset Program Agreement"), which is attached as **Exhibit C**.

18.     On or about June 8, 2012, TracFone and Simply Wireless of Miami executed an amendment to the Handset Program Agreement (the "2012 Amendment").  A copy of the 2012 Amendment is attached as **Exhibit D**.

19.     On October 27, 2015, TracFone terminated its business relationship with Defendants.  A copy of the correspondence notifying Defendants of the termination (the "Termination Letter") is attached as **Exhibit E.**

20.     Over the nine (9) year period during which TracFone conducted business with Simply Wireless (Virginia) and Simply Wireless of Miami, the scope of the HSN/Simply Wireless Handset Program expanded to provide for Defendants to sell TracFone handsets through several marketing platforms in addition to the Home Shopping Network, including QVC, Amazon, eBay, Groupon, and others.

21.     Simply Wireless (Virginia) has registered a trademark for "Shopcelldeals" with the United States Patent and Trademark Office, and does business as Shopcelldeals on eBay using the seller name "SHOPCELLDEALS" as well as on its website, www.shopcelldeals.com.

22.     Pursuant to the HSN/Simply Wireless Handset Program, along with each handset TracFone sold to Simply Wireless of Miami, TracFone provided Airtime Service PINs

4

containing a certain amount of prepaid airtime minutes to create a bundled product to market to customers through this Program (the "Handset/Airtime Bundles").

23.     Although TracFone typically sells its prepaid airtime minutes separately from its handsets, TracFone provided the promotional Airtime Service PINs with the understanding that those particular Airtime Service PINs would only be used to load prepaid airtime onto the handsets purchased by targeted customers for the Program.

24.     TracFone believed that the bundled product would be an attractive product to market and sell to customers who bought electronic products that were marketed on television platforms such as HSN.

25.     The reason that TracFone provided promotional Airtime Service PINs to Defendants at no upfront cost was because by selling a new TracFone handset bundled with TracFone prepaid airtime, TracFone expected to obtain new customers.  TracFone sacrificed the initial sale of the prepaid airtime minutes in exchange for the promise of obtaining many new TracFone customers through the HSN/Simply Wireless Handset Program who would then purchase TracFone Airtime Service to keep their devices active and continue as TracFone customers.  Being experienced and sophisticated participants in the prepaid mobile phone industry, Defendants were well aware of TracFone's intentions.

26.     Defendants understood that TracFone was providing the promotional PINs at no additional charge so that Defendants could bundle the promotional airtime with TracFone handsets in order to market a more attractive product through the Handset Program.  However, instead of bundling all of these promotional Airtime Service PINs with TracFone handsets and marketing them to the designated customers, Simply Wireless of Miami took a significant portion of the promotional Airtime Service PINs provided by TracFone and transferred them to its corporate affiliate, Simply Wireless (Virginia), which then sold these Airtime Service PINs directly to customers for profit through its shopcelldeals.com website and other platforms.

5

27. This caused significant harm to TracFone because instead of including the prepaid minutes to a new customer bundled with a TracFone handset as intended by the parties' agreements, Simply Wireless (Virginia) sold the promotional prepaid airtime minutes to existing TracFone customers. TracFone received no revenue from the sale of the promotional Airtime Service PINs by Simply Wireless (Virginia) because it provided them to Simply Wireless of Miami at no additional cost for use in the bundling promotion.

28. Through their Improper Airtime Resale Business, Defendants earned a substantial profit by selling promotional Airtime Service PINs for which they paid nothing to TracFone.

29. Defendants continue to perpetrate their Improper Airtime Resale Business despite TracFone's demands to stop their illegal and improper conduct.

30. Defendants' conduct is causing TracFone to suffer substantial pecuniary losses and has caused immediate and irreparable injury to TracFone.

### TRACFONE'S BUSINESS MODEL

31. TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its service under the various TracFone Brands.

32. TracFone's customers load TracFone Service into their TracFone Brand prepaid devices using codes and proprietary tools that electronically validate the Airtime Service PINs associated with the TracFone Service before loading it onto the TracFone Brand device, online, through TracFone's IVR (interactive voice response) system, or through a TracFone customer service representative who assists in validating and loading the TracFone Service to the TracFone Brand device.

33. TracFone is considered a "Mobile Virtual Network Operator" or "MVNO" in the wireless industry. TracFone is not a facilities-based wireless provider like AT&T, Verizon, T-Mobile or Sprint/Nextel. Rather, TracFone contracts with facilities-based wireless providers to purchase airtime on their networks for use by TracFone's customers.

34.     If TracFone Service is improperly acquired and subsequently activated, TracFone is damaged because it was not compensated for the service being used, which TracFone has purchased from its carrier partners.

<u>**DEFENDANTS' MISCONDUCT**</u>

35.     Over the last several years, as part of the HSN/Simply Wireless Handset Program, TracFone delivered hundreds of thousands of promotional Airtime Service PINs to Simply Wireless of Miami.

36.     Once in possession of the promotional Airtime Service PINs, instead of bundling them with TracFone Program handsets for customers as they were supposed to do, Simply Wireless of Miami improperly separated a significant quantity of these items and transferred them to its corporate affiliate Simply Wireless (Virginia), which then sold these items directly to customers for profit through its shopcelldeals.com website and other platforms.

37.     Specifically, while over 400,000 of the promotional Airtime Service PINs provided by TracFone to Simply Wireless of Miami were activated by end-user consumers more than 100,000 of those activated Airtime Service PINs were redeemed by end-users for reactivations or redemptions not associated with the Program's acquisition of new customers, or were used in phones sold by other, unauthorized retailers, meaning that the Airtime Service PINs were not bundled with the TracFone handsets as agreed and were instead sold by Simply Wireless (Virginia) for profit.

38.     Through its investigations, TracFone has discovered that Simply Wireless (Virginia) improperly resells a certain quantity of TracFone's promotionally provided promotional bundle Airtime Service by advertising the service and then selling the PIN numbers directly to customers via eBay, Amazon and other channels.  Simply Wireless (Virginia) markets and sells the Airtime Service on eBay as seller "SHOPCELLDEALS" and also advertises

Airtime Service at below market rates on its website shopcelldeals.com.  Simply Wireless (Virginia) also sells the Airtime Service PINs directly to end-user consumers.

39.     By selling a significant portion of the Airtime Service PINs directly to existing TracFone customers instead of bundling them with the TracFone handsets for the purpose of acquiring new TracFone customers, Simply Wireless (Virginia) has been unjustly enriched by at least hundreds of thousands of dollars, and TracFone did not receive the revenue from the unauthorized resale of the promotional Airtime Service PINs.

40.     TracFone cannot ascertain the exact amount of damage without an accounting from Defendants identifying, among other things, the number of Airtime Service PINs improperly transferred and/or sold.

41.     TracFone has been proximately damaged by the Improper Airtime Resale Business and by Defendants' actions in furtherance thereof.

42.     On or about October 27, 2015, TracFone provided Simply Wireless of Miami with ninety (90) days' notice of its intention to terminate the business relationship, including all agreements and understandings, between the parties, On December 7, 2015, TracFone and Defendants entered into an agreement designed to govern their business relationship during the 90-day notice period (the "Transition Agreement").  A copy of the Transition Agreement is attached as **Exhibit F**.

43.     The Transition Agreement reflects a compromise between TracFone and Defendants whereby TracFone agreed to maintain its business relationship with Defendants during the interim transition period in exchange for certain promises and conditions agreed to by Defendants.

### SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

44.     Defendants' Improper Airtime Resale Business substantially harms TracFone because Simply Wireless (Virginia) is reselling TracFone's promotional Airtime Service to

customers for its own financial gain and providing no revenue to TracFone for the unauthorized resale of the Airtime Service PINs.

45.     Defendants' conduct has also caused TracFone to suffer a direct financial loss because the customers that purchased the promotional Airtime Service PINs from Simply Wireless (Virginia) would otherwise have purchased prepaid airtime minutes directly from TracFone or from the major retailers selling approved TracFone's products.   Instead, Defendants' improper conduct has caused TracFone to receive no revenue from these sales.

46.     In early December 2015, TracFone and Defendants entered into a Transition Agreement that was intended to orderly wind down TracFone's relationship with Defendants. Defendants induced TracFone to make significant concessions to enter into this Transition Agreement in order to make sure that Defendants would be able to sell TracFone products on an important HSN holiday show on December 9, 2015.

47.     In connection with the Transition Agreement, Defendants agreed to meet with TracFone to discuss various open items between the parties.   Yet, after the agreement was signed—and after TracFone provided its products to Defendants to facilitate the December 9, 2015 HSN show—Defendants deceitfully repudiated the agreement and said they would refuse to meet unless TracFone agreed in advance to certain conditions that were not part of the signed Transition Agreement.   This was a material term of the Transition Agreement. TracFone would not have agreed to enter the Transition Agreement if this term was not included.

48.     Defendants never intended to meet with TracFone as required by the Transition Agreement.

49.     Defendants benefited from their dishonest conduct by fraudulently inducing TracFone to enter into the Transition Agreement and it would be inequitable for Defendants to retain such benefits.

**CAUSES OF ACTION**

**COUNT ONE**

**UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER
(IN VIOLATION OF 18 U.S.C. § 1030(A)(5)(C), THE COMPUTER FRAUD AND ABUSE ACT)**
**(Against Simply Wireless (Virginia) and Simply Wireless of Miami)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 49, as though fully set forth herein.

50.     TracFone protects access to its computer network by allowing access only to certain authorized users including its call center representatives.

51.     TracFone protects access to its computer network by requiring codes and/or identifiers to in order to access the system.

52.     TracFone protects access to its telecommunications network by requiring certain codes to activate and reset the TracFone Service or requiring validation and activation at the point of purchase by authorized retailers.  The codes are known as Airtime Service PINs.

53.     Defendants, acting in concert, improperly resell TracFone's Airtime Service PINs to end users not contemplated by the parties' agreements instead of bundling the Airtime Service PINs with the TracFone handsets.

54.     Specifically, TracFone entered into agreements with Simply Wireless of Miami by which it provided Simply Wireless of Miami with certain promotional Airtime Service PINs at no charge, pursuant to the understanding that Simply Wireless of Miami would bundle such promotional airtime with TracFone handsets.

55.     Instead of bundling the promotional airtime, Simply Wireless of Miami transferred the Airtime to its corporate affiliate, Simply Wireless (Virginia).  Simply Wireless (Virginia) then sold the promotion airtime, which was provided by TracFone to Simply Wireless of Miami at no additional charge, for profit.

56.     After selling the airtime that was improperly transferred from Simply Wireless of Miami, Simply Wireless (Virginia), obtained access to TracFone's proprietary computer systems by aiding, abetting, encouraging, facilitating, or otherwise assisting end-user customers to access TracFone's wireless network with the airtime that was improperly and unlawfully obtained and sold.

57.     Neither Simply Wireless of Miami nor Simply Wireless (Virginia) were authorized to access TracFone's proprietary computer system in any way and knew that they were not authorized to access the protected computer system.

58.     Similarly, neither Simply Wireless of Miami nor Simply Wireless (Virginia) were authorized to aid, abet, encourage, facilitate, or otherwise assist end-user customers in accessing TracFone's proprietary computer system, and knew that they were not authorized to do so.

59.     Alternatively, if Defendants were authorized to access TracFone's proprietary computer system, such access was limited by the agreements in place between TracFone and Defendants.

60.     Specifically, Simply Wireless of Miami exceeded its authorized access to TracFone's computer systems by improperly transferring the promotional airtime to Simply Wireless (Virginia), which sold the airtime to customers despite knowing that the airtime was obtained unlawfully and then aided, abetted, encouraged, facilitated, or otherwise assisted end-user customers in accessing TracFone's proprietary computer system with said airtime.

61.     Simply Wireless of Miami's improper transfer of the promotional airtime, Simply Wireless (Virginia)'s unlawful sale to end-user customers, and Simply Wireless (Virginia)'s subsequent conduct related to aiding, abetting, facilitating, or otherwise assisting those end-users in activating the airtime by accessing TracFone's computer systems, resulted in unauthorized devices accessing TracFone's protected telecommunications network.  Alternatively, Defendants' conduct

as described above resulted in devices accessing TracFone's protected telecommunications network in such a manner that those devices exceeded their authorized access.

62.     Defendants' conduct exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Simply Wireless of Miami improperly transferred the promotional airtime to Simply Wireless (Virginia), which improperly accessed TracFone's proprietary computer system and telecommunications network by aiding, abetting, facilitating, or otherwise assisting the end-user purchasers of its illicit airtime sales to access TracFone's systems.  Defendants engaged this conduct to enable Simply Wireless (Virginia)  to resell the promotional airtime, which TracFone provided to Simply Wireless of Miami at no additional cost for use in Handset/Airtime Bundles, for profit.

63.     TracFone's proprietary computer system and telecommunications network are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

64.     Simply Wireless (Virginia) furthers this scheme by reselling the TracFone Service it improperly obtained from Simply Wireless of Miami, and falsely offering the prepaid Airtime to the public as authentic TracFone prepaid airtime, when, in fact, that Airtime was obtained under false pretenses.

65.     Defendants'   activities   substantially   affect   interstate   commerce   and communication in that the TracFone Service is trafficked over the Internet and throughout the United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

66.     Defendants' coordinated conduct resulted in the unauthorized access of TracFone's proprietary computer system and wireless telecommunications network and has caused and will continue to cause TracFone to suffer injury, with "damages" and "losses"—as

those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

67.   With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network by taking action to counteract Simply Wireless of Miami's improper transfer of promotional airtime and Simply Wireless (Virginia)'s unlawful sale thereof, and by conducting a damage assessment regarding Defendants' coordinated actions, as well as tracking down fraudulently sold TracFone Service.

68.   With respect to damage, by infiltrating, or otherwise assisting the infiltration of,  the TracFone computer system and telecommunications network, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.

69.   Defendants' conduct is intentional, malicious, and willful, and continues to cause irreparable harm to TracFone.

70.   Analyzed together, Defendants' activities, constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

71.   TracFone is entitled to the entry of an injunction enjoining Defendants from any further violations of the statute.

72.   Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

## COUNT TWO

### UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER WITH INTENT TO DEFRAUD
### (IN VIOLATION OF 18 U.S.C. § 1030(A)(4), THE COMPUTER FRAUD AND ABUSE ACT)
### (Against Simply Wireless (Virginia) and Simply Wireless of Miami)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 49, as though fully set forth herein.

73.     TracFone protects access to its computer network by allowing access only to certain authorized users including its call center representatives.

74.     TracFone protects access to its computer network by requiring codes and/or identifiers to in order to access the system.

75.     TracFone protects access to its telecommunications network by requiring certain codes to activate and reset the TracFone Service or requiring validation and activation at the point of purchase by authorized retailers.  The codes are known as Airtime Service PINs.

76.     Simply Wireless (Virginia) unlawfully resells TracFone's promotional Airtime Service PINs, which it improperly obtained from Simply Wireless of Miami, to end-user customers.  This conduct is not authorized by the agreements between TracFone and Simply Wireless of Miami, which contemplate  bundling the promotional Airtime Service PINs with the TracFone handsets.

77.     Simply Wireless of Miami knowingly and with intent to defraud obtained additional promotional Airtime Service PINs from TracFone and transferred those PINs to Simply Wireless (Virginia).   Simply Wireless of Miami was not authorized to transfer the promotional airtime to Simply Wireless (Virginia) for resale and, at all times, Simply Wireless of Miami knew it was not authorized to do so.

78.     Simply Wireless (Virginia), with the aid and assistance of Simply Wireless of Miami, knowingly and with the intent to defraud, obtained access, or aided, abetted, encouraged, facilitated, or otherwise assisted others in obtaining access, to TracFone's proprietary computer

system by selling improperly obtained promotional airtime to end-user customers and assisting those customers in activing the airtime.  Simply Wireless (Virginia) was not authorized to access, or to aid, abet, encourage, facilitate, or otherwise assist others to access, TracFone's proprietary computer system in any way, and knew that it was not authorized to do so.

79.     Defendants' coordinated conduct results in unauthorized devices accessing TracFone's protected telecommunications network.

80.     Defendants' conduct exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Simply Wireless of Miami, knowingly and with intent to defraud, transferred the promotional airtime to Simply Wireless (Virginia), which, knowingly and with intend to defraud, accessed TracFone's proprietary computer system and telecommunications network by aiding, abetting, facilitating, or otherwise assisting the end-user purchasers of its illicit airtime sales to access TracFone's systems.  Defendants engaged this conduct to enable Simply Wireless (Virginia)  to resell the promotional airtime, which TracFone provided to Simply Wireless of Miami at no additional cost for use in Handset/Airtime Bundles, for profit.

81.     TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

82.     Defendants further their scheme by offering the promotional prepaid airtime to the public as authentic TracFone prepaid airtime and reselling the promotional TracFone airtime through Simply Wireless (Virginia), which obtained the promotional airtime through conduct committed by its corporate affiliate, Simply Wireless of Miami.

83.     Defendants' activities substantially affect interstate commerce and communication in that the TracFone Service is trafficked over the Internet and throughout the United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

84. Defendants' coordinated conduct resulted in the unauthorized access of TracFone's proprietary computer system and wireless telecommunications network and has caused and will continue to cause TracFone to suffer injury, with "damages" and "losses"—as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

85. With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network by taking action to counteract Simply Wireless of Miami's improper transfer of promotional airtime and Simply Wireless (Virginia)'s unlawful sale thereof, and by conducting a damage assessment regarding Defendants' coordinated actions, as well as tracking down fraudulently sold TracFone Service.

86. With respect to damage, by infiltrating, or otherwise assisting the infiltration of, the TracFone computer system and telecommunications network, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000. Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.

87. Defendants' conduct is intentional, malicious, and willful, and continues to cause irreparable harm to TracFone.

88. Defendants' activities constitute unauthorized access with intent to defraud in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

89. TracFone is entitled to the entry of an injunction enjoining Defendants from any further violations of the statute.

90. Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the

factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

## COUNT THREE

### KNOWINGLY TRAFFICKING IN PASSWORD INFORMATION WITH INTENT TO DEFRAUD
### (IN VIOLATION OF 18 U.S.C. § 1030(A)(6), THE COMPUTER FRAUD AND ABUSE ACT)
### (Against Simply Wireless (Virginia) and Simply Wireless of Miami)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 49, as though fully set forth herein.

91.    TracFone protects access to its telecommunications network by requiring certain codes to activate and reset the TracFone Service.  The codes are in the form of Airtime Service PINs.  Airtime Service PINs are located on the reverse side of Airtime Cards and when a valid PIN is input into TracFone's proprietary authorization system, the airtime associated with that PIN is activated for use on TracFone's wireless network.

92.    The Airtime Service PINs constitute password information as contemplated under 18 U.S.C. § 1030(a)(6) of the Computer Fraud and Abuse Act.

93.    TracFone's proprietary computer system and telecommunications network are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

94.    Pursuant to agreements between TracFone and Simply Wireless of Miami, TracFone provided Simply Wireless of Miami with promotional Airtime Service PINs to be offered for sale to customers as Handset/Airtime Bundles.

95.    The promotional Airtime Service PINs contained the PIN numbers necessary to authorize the airtime associated with those PINs for service on TracFone's network.

96.    The promotional Airtime Service PINs were given to Simply Wireless of Miami, at no additional charge, as part of a product promotion whereby Simply Wireless of Miami sold TracFone telephones that came pre-authorized with airtime Service.  As part of the promotion,

17

Simply Wireless of Miami was required to input the PINs that were provided to them, at no cost, into TracFone's authorization system in order to apply the service to the phones sold as part of the promotion.

97.     Instead of using the promotional Airtime Service PINs as part of the promotional Handset/Airtime Bundle, Simply Wireless of Miami transferred certain promotional Airtime Service PINs to its corporate affiliate, Simply Wireless (Virginia), which sold those PINs directly to consumers for profit.

98.     Simply Wireless of Miami knowingly transferred the promotional Airtime Service PINs to Simply Wireless (Virginia) for the purpose of allowing Simply Wireless (Virginia) to sell those promotional PINs for profit.

99.     Simply Wireless (Virginia) knowingly sold the promotional PINs to consumers, which it knew were provided by TracFone to Simply Wireless of Miami at no additional charge, consistent with the parties' understanding that the promotional airtime would be bundled with TracFone handsets.

100.     Indeed, Simply Wireless of Miami knowingly obtained and transferred the promotional PINs to Simply Wireless (Virginia) with the intent to defraud TracFone.  Similarly, Simply Wireless (Virginia) knowingly received and sold the promotional PINs to end-user customers with the intent to defraud TracFone. Through this conduct, Defendants' diverted promotional PINs, which were intended to be part of promotional Handset/Airtime Bundles, in order to sell the promotional airtime directly to end-user consumers for profit.

101.     Thus, Defendants defrauded TracFone by obtaining promotional Airtime Service PINs under false pretenses, and then selling those PINs for profit.

102.     Defendants' activities substantially affect interstate commerce and communication in that the TracFone Service is trafficked over the Internet and throughout the

United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

103.    Defendants' coordinated conduct resulted in the unauthorized access of TracFone's proprietary computer system and wireless telecommunications network and has caused and will continue to cause TracFone to suffer injury, with "damages" and "losses"—as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

104.    With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network by taking action to counteract Simply Wireless of Miami's improper transfer of promotional airtime and Simply Wireless (Virginia)'s unlawful sale thereof, and by conducting a damage assessment regarding Defendants' coordinated actions, as well as tracking down fraudulently sold TracFone Service.

105.    With respect to damage, by trafficking in promotional Airtime Service PINs, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.

106.    TracFone is entitled to the entry of an injunction enjoining Defendants from any further violations of the statute.

107.    Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

## COUNT FOUR

### UNJUST ENRICHMENT IN VIOLATION OF FLORIDA COMMON LAW
### (AIRTIME CARDS)
### (Against Simply Wireless (Virginia))

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 49, as though fully set forth herein.

108.    As of March 3, 2011, all of TracFone's business dealings with Defendant were done pursuant to written agreements between TracFone and Simply Wireless of Miami; Simply Wireless (Virginia) was no longer a signatory on any of the parties' express agreements.

109.    In connection with the March 2011 Agreement and its various amendments, TracFone provided Simply Wireless of Miami—not Simply Wireless (Virginia)—with promotional Airtime Service PINs.

110.    By improperly reselling TracFone prepaid airtime, Simply Wireless (Virginia) obtained benefits from TracFone that have resulted in significant financial benefits to Simply Wireless (Virginia).

111.    Simply Wireless (Virginia) acquired these benefits voluntarily and with full knowledge.

112.    Simply Wireless (Virginia) has retained the benefits under such circumstances that make it unjust and inequitable for Simply Wireless (Virginia) to retain these benefits without paying TracFone the value of the benefits Simply Wireless (Virginia) acquired.

113.    Simply Wireless (Virginia) is not a party to the Handset Program Agreement. Thus, without an agreement between TracFone and Simply Wireless (Virginia) that covers the conduct complained of, TracFone has no adequate remedy at law.

20

## COUNT FIVE

### ACCOUNTING
**(Against Simply Wireless (Virginia))**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 49, as though fully set forth herein.

114.    Beginning in 2007 TracFone and Simply Wireless (Virginia) participated in extensive transactions as part of their agreements to sell handsets and airtime to targeted customers.

115.    As discussed in this pleading, TracFone provided hundreds of thousands of various Airtime Service PINs and handsets to Simply Wireless of Miami.  This included the promotional Airtime Service PINs.

116.    Many of the promotional Airtime Service PINs were diverted by Simply Wireless of Miami to Simply Wireless (Virginia) and sold to end-user customers without authorization.

117.     It is unclear how many promotional Airtime Service PINs were improperly transferred from Simply Wireless of Miami to Simply Wireless (Virginia), how many were sold altogether, how many were improperly sold, and how many of TracFone's products are still in Simply Wireless (Virginia)'s possession.

118.    The damages due to TracFone from Simply Wireless (Virginia) can only be ascertained by way of an accounting inquiry.

119.    The damages at issue in this litigation are extensive and complex, and, as such, TracFone's remedy at law is as not as full, adequate, and expeditious as it is at equity.

## COUNT SIX

### FRAUD IN THE INDUCEMENT IN VIOLATION OF FLORIDA COMMON LAW
**(Against Simply Wireless (Virginia) and Simply Wireless of Miami)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 49, as though fully set forth herein.

120.    For the last several months, TracFone and Defendants have engaged in discussions regarding Defendants' misconduct as described in detail herein.

121.    On or about October 27, 2015, TracFone provided Defendants with ninety (90) days' notice of its intention to terminate the business relationship, including all agreements and understandings, between the parties,

122.    On December 7, 2015, TracFone and Defendants entered into the Transition Agreement designed to govern their business relationship during the 90-day notice period.

123.    The Transition Agreement reflects a compromise between the parties.

124.    In exchange for TracFone's compromise to continue its business relationship with Defendants for the interim 90-day period, TracFone demanded, among other things, that Defendants agree to schedule a meeting with TracFone to discuss various outstanding issues.

125.    Defendants represented to TracFone that they were amenable to such a condition, and a contractual provision reflecting that agreement was drafted into the Transition Agreement.

126.    As such, a material provision of the Transition Agreement required TracFone and Defendants to schedule a meeting within ten (10) days of executing the Transition Agreement. The terms of that provision are as follows:

> The Parties agree to schedule a meeting at TracFone's headquarters within ten (10) calendar days of the date this agreement is executed to (a) discuss the requirements for completing any other QVC and HSN shows occurring prior to the termination date and (b) reconcile the accounts receivable and monies owed to each party and (c) other items on an agenda to be agreed to by the parties.

127.    Defendants' willingness to agree to such a meeting was a material condition to TracFone's acceptance of other terms of the Transition Agreement, including its compromise to continue its business relationship with Defendants during the interim transition period.

128.    On or about December 9, 2015, TracFone contacted Defendants and proposed dates and times to schedule the meeting agreed to in the Transition Agreement.

129.    That same day, Defendants' agent, Steven Quershi, informed TracFone that Defendants would not schedule the meeting until TracFone agreed to reinstate all prior agreements and understandings between TracFone and Defendants, on the same terms as those agreements and understandings existed prior to TracFone's decision to terminate its business relationship with Defendants.

130.    Defendants' knew or should have known that their statement that they were amenable to scheduling this meeting, and their decision to incorporate that material term into the parties' agreement, was false.

131.    To date, Defendants have not complied with their duties under the Transition Agreement to schedule the meeting and the time for Defendants to do so has long-since expired.

132.    Defendants intended for TracFone to rely on that statement when assenting to the Transition Agreement and entering into a compromise with Defendants.  Indeed, Defendants' goal was to maintain a business relationship with TracFone–a relationship that was very profitable for Defendant, especially in light of their misconduct.

133.    TracFone relied, to its detriment, on Defendants' false statement.  Defendants' agreement to schedule this meeting and discuss their prior misconduct was a material and important factor in TracFone's compromise to continue its business relationship with Defendants on an interim basis.

134.    TracFone's reliance on Defendants' statement was justified.

135.    Defendants' induced TracFone to continue the parties' business relationship on an interim basis by promising to engage in a formal discussion regarding TracFone's concerns over their prior misconduct.

136.    Defendants' conduct was willful and intentional, and was a calculated plan to induce TracFone into a continued business relationship under false pretenses.

137.    As a result of Defendants' material misrepresentation, TracFone has been damaged.

138.    Due to the egregious nature of Defendants' conduct, TracFone seeks judgment against Defendants for all damages allowable by law, including punitive damages.

### COUNT SEVEN

### BREACH OF THE TRANSITION AGREEMENT IN VIOLATION OF FLORIDA COMMON LAW
**(Against Simply Wireless (Virginia) and Simply Wireless of Miami)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 49, as though fully set forth herein.

139.    This claim is pled in the alternative to Count Eight below, unjust enrichment in violation of Florida common law.

140.    For the last several months, TracFone and Defendants have engaged in discussions regarding Defendants' misconduct as described in detail herein.

141.    On or about October 27, 2015, TracFone provided Defendants with ninety (90) days' notice of its intention to terminate the business relationship, including all agreements and understandings, between the parties.

142.    On December 7, 2015, TracFone and Defendants entered into the Transition Agreement designed to govern their business relationship during the 90-day notice period.

143.    In exchange for TracFone's compromise to continue its business relationship with Defendants for the interim 90-day period, TracFone demanded, among other things, that Defendants agree to schedule a meeting with TracFone to discuss various outstanding issues.

144.    As such, a material provision of the Transition Agreement required TracFone and Defendants to schedule a meeting within ten (10) days of executing the Transition Agreement. The terms of that provision are as follows:

> The Parties agree to schedule a meeting at TracFone's headquarters within ten (10) calendar days of the date this agreement is executed to (a) discuss the requirements for completing any other QVC and HSN shows occurring prior to the termination date and

(b) reconcile the accounts receivable and monies owed to each party and (c) other items on an agenda to be agreed to by the parties.

145.    Defendants' willingness to agree to such a meeting was a material condition to TracFone's acceptance of other terms of the Transition Agreement, including its compromise to continue its business relationship with Defendants during the interim transition period.

146.    As of the current date (January 14, 2016)Defendants have not complied with their duties under the Transition Agreement to schedule the meeting and the time for Defendants to do so has long-since expired.

147.    TracFone has been damaged as a result of Defendants' conduct.

## COUNT EIGHT

### UNJUST ENRICHMENT IN VIOLATION OF FLORIDA COMMON LAW
### (DISGORGEMENT OF PROFITS FROM TRANSITION AGREEMENT)
### (Against Simply Wireless (Virginia) and Simply Wireless of Miami)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 49, as though fully set forth herein.

148.    This claim is pled in the alternative to Count Seven above, breach of the Transition Agreement in violation of Florida common law.

149.    TracFone conferred a benefit on Defendants by entering into the Transition Agreement in that TracFone agreed to maintain its business relationship with Defendants during the interim 90-day transition period in exchange for certain promises and concessions by Defendants.

150.    Defendants accepted the benefits of the Transition Agreement and enjoyed the profits from the sale of TracFone products during the interim transition period.

151.    Defendants accepted the benefits of the Transition Agreement and enjoyed the profits from the sale of TracFone products without ever intending to comply with their obligations under the Transition Agreement.

152.    Because Defendants never intended to comply with their obligations under the Transition Agreement, and never in fact performed as required under that agreement, Defendants never conferred a benefit upon TracFone.

153.    Because Defendants have enjoyed the profits from the sale of TracFone products during the transition period under false pretenses, it would be inequitable and unjust to allow Defendants to retain those benefits.

154.    TracFone requests that Defendants profits from the sale of TracFone products be disgorged and paid to TracFone in light of the inequitable circumstances under which those profits were earned.

## PRAYER FOR RELIEF

Wherefore, TracFone respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of TracFone and against Defendants Simply Wireless, Inc. and Simply Wireless of Miami, Inc. as follows:

a.    awarding TracFone its compensatory, consequential, statutory, special, treble, and punitive damages including, without limitation, its lost profits, loss of goodwill, and damage to its reputation, as provided by law, together with pre and post-judgment interest;

b.    awarding to TracFone restitution of all money and property unlawfully and unfairly taken by Defendants through their unfair and unlawful conduct;

c.    awarding TracFone permanent injunctive relief against Defendants and enjoining Defendants from engaging in the unlawful practices described in this Amended Complaint;

d.    awarding TracFone its reasonable attorneys' fees and costs of this action, as permitted by applicable rules and statutes;

e.    requiring Defendants to provide an accounting of (i) how many TracFone Airtime Service PINs Defendants sold, by specific PIN and customer; (ii) how many TracFone

products Defendants still maintain in their possession; and (iii) the amounts of money received

from customers for the unauthorized resale of the TracFone Airtime Service PINs; and

      f.     granting such further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff TracFone Wireless, Inc. hereby demands a

trial by jury on all triable issues.


Dated: January 14, 2016.          By: _____

Aaron S. Weiss (FL Bar #48813)
Email: aweiss@carltonfields.com
Carlton Fields Jorden Burt, P.A
100 Southeast Second Street, Suite 4200
Miami, Florida 33131
Telephone No. (305) 530-0050
Facsimile No. (305) 530-0055

James B. Baldinger (FL Bar # 869899)
Email: jbaldinger@carltonfields.com
Carlton Fields Jorden Burt, P.A
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone No. (561) 659-7070
Facsimile No. (561) 659-7368

*Attorneys for Plaintiff TracFone Wireless, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 14, 2016 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>*s/ Aaron S. Weiss*</u>
Aaron S. Weiss

<u>Service List</u>

Mark Raymond
Broad & Cassel
Email: mraymond@broadandcassel.com
2 South Biscayne Boulevard
One Biscayne Tower - 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9425
Facsimile (305) 995-6385

*Attorneys for Defendants*

(Via CM/ECF only)

28