UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:15-CV-24565

TRACFONE WIRELESS, INC.,

     Plaintiff,

v.

SIMPLY WIRELESS, INC., a Virginia
corporation, d/b/a SHOPCELLDEALS,
MOBILE NOW, INC., a Virginia corporation,
and SIMPLY WIRELESS OF MIAMI, INC., a
Florida corporation,

     Defendants.

_____/

## DEFENDANTS SIMPLY WIRELESS, INC., MOBILE NOW, INC., AND SIMPLY WIRELESS OF MIAMI, INC.'S, MOTION TO DISMISS SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION

Pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, Defendants, Simply Wireless, Inc. ("Simply Wireless (Virginia)"), Mobile Now, Inc. ("Mobile Now"), and Simply Wireless of Miami, Inc., ("Simply Wireless of Miami"), (collectively, "Simply Wireless" or "the Simply Wireless companies"), file this Motion to Dismiss Plaintiff TracFone Wireless, Inc.'s ("TracFone") Second Amended Complaint [DE 33].

### Introduction

On its third attempt to articulate a cognizable claim in federal court, TracFone resorts to ignoring documents, its own prior allegations to this Court, and applicable law in its latest effort to escape the binding arbitration provision that requires TracFone to bring its claims against Simply Wireless of Miami and its interrelated claims against Simply Wireless (Virginia) in arbitration. And, once again and for the same reason, TracFone distorts and ignores facts to fabricate other claims related to irrelevant agreements that do not contain the arbitration

provision. This third bite at the apple should be TracFone's last, and this Court should dismiss the Second Amended Complaint with prejudice.

## Background

Simply Wireless is a highly successful, family-owned company that has built and earned a reputation as a wireless industry leader. Since 1997, Simply Wireless has worked with the major wireless telephone companies in the United States, including AT&T, Sprint, T-Mobile, Verizon, and many of their predecessor entities (collectively, "Carriers") to coordinate sales through TV shopping networks and Internet stores. More than 90% of the TV Networks' current wireless product assortments are sold and distributed by Simply Wireless.

TracFone is a prepaid wireless service carrier in the United States and is a subsidiary of Mexican multinational telecommunications company America Movil. TracFone "piggy backs" on the cellular networks of the Carriers to provide its service. In 2007, TracFone began to work with Simply Wireless in order to expand TracFone's business and grow it in markets in which TracFone previously had little to no success, including on the TV Networks. For over eight years, TracFone benefitted from Simply Wireless's expertise, reputation, relationships, and abilities as Simply Wireless helped expand TracFone's business and grow it in markets in which TracFone previously had little to no success.

During this time, Simply Wireless and TracFone entered into various written agreements outlining requirements and pricing for various deals. TracFone attached the various agreements between the parties as exhibits to its Amended Complaint, but has failed to attach them all to its Second Amended Complaint. *Compare* Amended Complaint [DE 9] at Exhibits A-D [DE 9-1 – DE 9-4] with Second Amended Complaint [DE 33] at Exhibit A [DE 33-1]. For the Court's convenience, Simply Wireless attaches a copy of the various agreements between the parties,

including the November 11, 2007 letter agreement between TracFone Wireless, Inc., and Simply Wireless, Inc. (as **Exhibit A**); the March 3, 2011 letter agreement between TracFone Wireless, Inc., and Simply Wireless of Miami, Inc. (as **Exhibit B**); the October 12, 2011 letter agreement between TracFone Wireless, Inc., and Simply Wireless of Miami, Inc. (as **Exhibit C**); and the June 8, 2012 Amendment to the October 12, 2011 letter agreement between TracFone Wireless, Inc., and Simply Wireless of Miami, Inc. (as **Exhibit D**).

For approximately eight years, Simply Wireless and TracFone enjoyed a friendly relationship in which TracFone greatly benefitted from Simply Wireless's expertise, experience, and relationships, allowing TracFone to grow its business and expand into new market segments. Adverse market forces singular to TracFone's business model and apart from Simply Wireless's successful work for TracFone caused TracFone's business expansion to lag in 2015. Moreover, in 2015 TracFone was hit with approximately $40 million in sanctions from the Federal Trade Commission related to TracFone's deceptive consumer conduct and manipulation of wireless download speeds. Faced with declining growth, massive sanctions, and staggering losses, TracFone decided to usurp the profitable position held by Simply Wireless and attempt to cut Simply Wireless out of the successful partnerships Simply Wireless developed for TracFone. TracFone's unfounded and improperly-plead Second Amended Complaint is merely a tactic within TracFone's scheme to cut Simply Wireless out of its long-standing relationships and to damage Simply Wireless's reputation in the industry.

TracFone's scheme is evident in the Second Amended Complaint's many infirmities which mandate its dismissal. As an initial matter, TracFone has ignored a very broad arbitration clause that binds the parties and governs the issues raised in this Second Amended Complaint, preventing TracFone from bringing this action in federal court. At its core, TracFone's complaint

is that it was allegedly not paid for Airtime PINs it claims Simply Wireless "unbundled" from handsets and sold to TracFone customers, but TracFone can point to no language in any of the parties' agreements that requires Simply Wireless to sell the Airtime PINs only in connection with handset sales.

Moreover, TracFone has invented bogus, improperly-pled, and factually unsupported claims for violation of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030 and the Lanham Act. Because TracFone claims that it has been damaged monetarily, TracFone's claims for injunctive relief fail, too. And, TracFone's attendant state court claims are equally groundless and improperly plead. For these reasons, as set forth more fully below, this Court should dismiss TracFone's Second Amended Complaint with prejudice.

## MEMORANDUM OF LAW

### I.   Legal Standard on Motion to Dismiss under Rule 12(b)(6)

Rule 8(a)(2), Federal Rules of Civil Procedure, requires a plaintiff to allege a short and plain statement of the claim showing the plaintiff is entitled to relief. Rule 12(b)(6), Federal Rules of Civil Procedure, provides defendants a mechanism for challenging a plaintiff's right to recover on a particular set of facts or a particular cause of action. To that end, Rule 8, "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).

Although courts accept well-pleaded facts as true, the U.S. Supreme Court has rejected the previously-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957)); *see also Coventry First, LLC v. McCarty*, 605 F.3d 865, 868-69 (11th Cir. 2010) (citing *Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)). Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "Under *Iqbal*, District Court Judges should dismiss lawsuits that seem 'implausible' to them," and "[w]hether a lawsuit is implausible 'requires the reviewing court to draw on [their] judicial experience and common sense.'" *Abecassis v. Eugene M. Cummings, P.C.*, 09-81846-CIV, 2010 WL 9452252, at *2 (S.D. Fla. 2010) aff'd, 467 Fed. Appx. 809 (11th Cir. 2012) (citing *Iqbal*, 129 S. Ct. at 1950).

The Eleventh Circuit has held that courts considering motions to dismiss should adopt a "two-pronged approach" in applying the "plausibility" principles of *Twombley/Iqbal*, first, eliminating any allegations that are mere legal conclusions and, second, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 129 S. Ct. at 1950). "Importantly, the Court held in *Iqbal,* as it had in *Twombly,* that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citing *Iqbal* at 1951–52 (quoting *Twombly,* 550 U.S. at 567, 127 S.Ct. at 1972)).

In addition, on a Rule 12(b)(6) motion, a court generally may not look beyond the pleadings. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n. 11 (11th Cir. 1997). However, the pleadings include any information attached to a complaint. *See* Fed. R.Civ.P. 10(c); *Crenshaw v. Lister*, 556 F.3d 1283, 1291 (11th Cir. 2009). And, "a district

court may consider a document attached to a motion to dismiss if it is (1) central to the party's claim, and (2) its authenticity is not challenged." *Leader Global Solutions, LLC v. Tradeco Infraestructura*, Case No. 15-cv-22130-UU, 2016 WL 146612, *2 (S.D. Fla. 2016), *citing SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir.2010); *see also Ferk v. Mitchell*, 14-CV-21916, 2014 WL 7369646, at *2 (S.D. Fla. Dec. 29, 2014) (Court may consult documents attached to complaint or motion to dismiss under "incorporation by reference" doctrine). If the relevant documents "contradict the general and conclusory allegations of the pleading, then the documents govern." *Leader Global Solutions, LLC*, at *3, *citing Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 13–21653–CIV, 2015 WL 7007983, at *4 (S.D. Fla. May 18, 2015); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (same).

Applying the appropriate standard of review, TracFone's Second Amended Complaint does not meet the *Twombly/Iqbal* plausibility standard and warrants dismissal with prejudice.

## II. TracFone's Allegations Contradict the Parties' Agreements.

The parties' agreements are central to this Court's review of TracFone's Second Amended Complaint, as they set the framework for the history between TracFone and the Simply Wireless companies, as well as formalize the business agreements between the parties. Here, the agreements entered into between the parties contradict TracFone's allegations and direct that any claims TracFone may have must be brought in arbitration. TracFone failed to attach all of these agreements to its Second Amended Complaint because it wants to ignore and avoid the effect of the agreements themselves. First, TracFone wants to avoid the binding arbitration provision between it and Simply Wireless of Miami, which is contained in the October 12, 2011 Agreement, attached as **Exhibit C**. Second, and perhaps more importantly, none of the relevant agreements requires Simply Wireless to sell Airtime Service PINs only as a

bundle with TracFone handsets – a fact that undermines nearly every claim brought by TracFone here. A simple review of the relevant agreements and key documents belies TracFone's disingenuous and self-serving allegations.

**A.      The Operative Agreement is the October 12, 2011 Agreement.**

The November 11, 2007 Agreement, to which TracFone referred (both in the agreement and throughout its Second Amended Complaint) as the "HSN/Simply Wireless Handset Program," provides that it is limited to a single NET10 handset model with a single marketing partner, HSN. *See* **Exhibit A**, at 1 (noting deal is for Motorola W375 handset and naming agreement "HSN/Simply Wireless Handset Program"). In contrast, the October 12, 2011 Agreement between Simply Wireless of Miami and TracFone references multiple NET10 and TracFone handsets across *all* of Simply Wireless's marketing partners, including HSN, QVC, Amazon, EBay, Woot.com, Buy.com, Groupon, and "Infomercials (direct TV sales)." *See* **Exhibit C**, at page 1 (authorizing Simply Wireless of Miami "to solicit the accounts listed under Exhibit A") and at page 5, Exhibit A (listing marketing partners).

TracFone attempts to distract the Court from the clear application of the October 12, 2011 Agreement by attaching to the Second Amended Complaint invoices and purchase orders dated after the date of the Agreement, claiming that these offer "proof" that the relationship continued to be with the "Virginia entities," rather than with Simply Wireless of Miami. *See* SAC [DE 33] at ¶ 24 and [DE 33-3] Composite Exhibit C. However, the October 12, 2011 Agreement provides that "[a]ll purchase orders submitted to and accepted by TracFone for Handsets are and shall be subject to this Agreement and shall be deemed to incorporate the terms and conditions of this Agreement, whether or not so specified in such Purchase Orders. Purchase Orders will not modify, supplement or conflict with the terms of this Agreement, unless

specifically agreed to in writing otherwise." **Exhibit C**, at pages 1-2. Thus, the purchase orders do not operate to negate the terms of the October 12, 2011 Agreement, which establishes the expanded business relationship between TracFone and the Simply Wireless companies.[1]

It is clear that, commencing with the execution of the October 12, 2011 Agreement, the parties recognized that Simply Wireless of Miami was the Simply Wireless company that would purchase handsets from TracFone for distribution through all marketing outlets. This fact is made even more evident by TracFone's October 27, 2015 Termination Letter, which TracFone attaches as Exhibit D to the Second Amended Complaint. [DE 33-4] TracFone addressed that letter, terminating the parties' ongoing relationship, to Simply Wireless of Miami, Inc., d/b/a Simply Wireless.

Despite the clear language in the Agreements, TracFone engages in a concerted effort to deceive this Court into concluding that the operative agreement between the parties is the November 11, 2007 Agreement (*see, e.g.*, SAC at ¶¶ 16-24) and that all of its business dealings with Simply Wireless over the course of the relationship have been with Simply Wireless (Virginia) based on the November 11, 2007 Agreement (*see, e.g.*, SAC at ¶ 21 (alleging that TracFone conducted business with Simply Wireless (Virginia) and Mobile Now through January 25, 2016) and ¶¶ 25-27 (alleging the "HSN/Simply Wireless Device Plan" applied to QVC promotions)). But, in order for this to be the case, the Court would have to first ignore the terms of the November 11, 2007 Agreement (and indeed its very name) that limit it to one handset on HSN to expand it to include all handsets across all marketing partners. The Court would then also have to completely ignore the existence of the October 12, 2011 Agreement which, by its

---

[1] Moreover, some purchase orders and invoices actually confirm that they were implementing the parties' October 12, 2011 Agreement. *Compare, e.g.*, October 12, 2011 Agreement **Exhibit C** at 1 (listing LG800G as handset covered by agreement) with January 17, 2012 Purchase Order [DE 33-3, page 16] and January 23, 2012 Invoice [DE 33-3, page 17] Invoice (for LG800G handset).

clear terms, is the agreement that applies to those expanded transactions and to the relevant time frame. These two leaps of logic render TracFone's allegations implausible under the *Twombly/Iqbal* pleading standard. *See*, *e.g.*, *Abecassis*, 2010 WL 9452252 at * 8 (ignoring conclusory allegations that do not comport with attachments to complaint).

### B. None of the Relevant Agreements Requires Simply Wireless to Sell Airtime Service PINs Only as a Bundle with a TracFone Handset.

Contrary to TracFone's numerous attempts in the Second Amended Complaint to establish that the agreements between the parties required Simply Wireless to bundle Airtime Service PINs to be sold and activated only with new TracFone handsets (*see* SAC at ¶¶ 25-33, 50-53, 82-83, 105, 122-127, 136, 138, 190-195, 197-200, 204-205), no such prohibition was contained in any of the relevant agreements. Notably, TracFone's erroneous claim that Simply Wireless was required to bundle the Airtime Service PINs and was prohibited from selling them separately forms the basis for nearly every count TracFone brings in the Second Amended Complaint.

However, the November 11, 2007 Agreement between TracFone and Simply Wireless, which memorializes the initial business transaction between the parties relating to the offering of a specific phone – the Motorola W375 – on HSN, does not contain any restriction on the use of the 150-minute Airtime Service Card included in the transaction – none. *See* SAC [DE 33] at Exhibit A. The only reference to Airtime Service Cards in the agreement is to acknowledge that they are included along with the handsets at no charge. Notably, although the agreement contains a provision that allows specifically for return of any handset not sold in connection with the program (*Id.* at 1) and contains elaborate detail on the minutiae of the policies and procedures governing the return of handsets (*Id.* at 2), it makes no mention of any restrictions on the use of the Airtime Service Cards and mentions nothing about what is to be done with Airtime Service

Cards that are not sold. (*Id.*) Similarly, the October 12, 2011 Agreement fails even to mention the Airtime Service PINs, much less establish that there is an agreement between the parties that the Airtime Service PINs must be bundled with handsets or that there is a prohibition on their individual sale. *See, generally*, **Exhibit C**. There is absolutely no language in any of the relevant agreements evidencing Plaintiff's claim that the Airtime Service PINs were required to be bundled and could not be sold separately.[2]

### III. The Parties are Governed by a Binding Arbitration Agreement which is Applicable to All of the Claims Brought by TracFone in this Action.

The October 12, 2011 letter agreement between Simply Wireless of Miami and TracFone contains the following broad arbitration provision:

> **Arbitration**. *All controversies, disputes or claims arising between the parties to this Agreement or arising out of or relating to the relationship of the parties to this Agreement* (together with any counterclaims and disputes under or in connection with other agreements between the Parties) *shall be submitted for arbitration* before a single arbitrator in accordance with the Rules of the American Arbitration Association ("AAA").... *The award and decision of the arbitrator shall be conclusive and binding on all parties hereto* and judgment on the award may be entered in any court of competent jurisdiction. Each party hereto waives any right to contest the validity or enforceability of such award.... Notwithstanding the foregoing, either party as the right to file for a temporary restraining order or other injunctive relief in a court of competent jurisdiction in order to enforce any provision of this Agreement to prevent irreparable harm to the filing party.

October 12, 2011 Agreement, **Exhibit C**, pages 8-9 (emphasis added). Given the broad language of the binding arbitration clause, it governs the claims TracFone improperly has brought in this

---

[2] The March 3, 2011 Agreement sets forth the parties' agreement with respect to monthly service plan offerings and does not implicate Airtime Service PINs, which are used only in pay-per-use handsets. *See, generally*, March 3, 2011 Agreement, **Exhibit B**. And the June 8, 2012 Amendment to the October 12, 2011 Agreement sets forth the parties' agreement with respect to commissions earned by Simply Wireless of Miami for its sale of NET 10 SIM cards, as well as for any NET 10 Unlimited Airtime Card/Code purchased by a NET 10 user from a third party for use on a NET 10 phone for which that user had purchased a NET 10 SIM card from Simply Wireless of Miami – again not implicating the Airtime Service PINs at issue in this case. *See, generally*, June 8, 2012 Amendment to October 12, 2011 Agreement, **Exhibit D**.

action, rather than submitting them to arbitration.

The Federal Arbitration Act, 9 U.S.C. §§1-16 ("FAA"), mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citation omitted). Indeed, the "'principle purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (citations omitted) (noting that "overarching purpose" of the FAA is to ensure enforcement of arbitration agreements "according to their terms so as to facilitate streamlined proceedings.") Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 1775 (2010); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

A motion to compel arbitration requires the moving party to demonstrate that a valid agreement to arbitrate exists and that the particular dispute falls within the scope of that agreement. *See Perera v. H & R Block E. Enters., Inc.*, No 12-22369-CIV, 2012 WL 5471942, at

*2 (S.D. Fla. Nov. 9, 2012) If both those factors are met, then the court must compel arbitration. *See Perera*, at *2 (noting "court is required to either stay or dismiss a lawsuit and to compel arbitration" when movant establishes valid agreement to which claims are subject); *see also United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd.*, 413 F. 3d 529, 786, 788 (8th Cir. 2005) ("An order to arbitrate…should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Here, TracFone entered into a clear and binding arbitration agreement (which it authored) in which it agreed to submit all claims arising between the parties to arbitration, and TracFone's claims clearly relate to "a dispute arising between the parties" and "the relationship of the parties," as set forth in the arbitration provision. *See* **Exhibit C**, page 8.

In the Eleventh Circuit, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Bell v. Atlantic Trucking Co.*, No. 09-CV-406J32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009). "Courts have deemed a motion seeking to compel arbitration as a factual attack as it asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims." *Id.* at *3.

In this case, Simply Wireless mounts a factual attack, challenging the very jurisdiction of this Court by asserting that a mandatory arbitration provision requires TracFone's claims to be brought in arbitration, rather than here. Under these circumstances, no factual weight is afforded to TracFone's allegations attempting to avoid the effects of the arbitration clause. Indeed, when an attack is factual,

the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, *no presumptive truthfulness* attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Bell*, at *2-3 (emphasis added) (*citing Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Here, the Court should weigh the evidence regarding the application of the arbitration provision without allowing any presumptive truth to attach to TracFone's allegations on the matter.

It is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp-Ala. v. Randoph*, 531 U.S. 79, 92 (2000); *accord Stone v. E.F. Hutton & Co., Inc.*, 898 F. 2d 1542, 1543 (11th Cir. 1990) (stressing that a party opposing the enforcement of an arbitration clause "bears a heavy burden of proof"). Moreover, when an arbitration clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[in] the absence of any express provision excluding a particular grievance from arbitration,…only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (citations omitted). And, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citations omitted). Here, TracFone's claims indisputably fall within the scope of the arbitration provision. Accordingly, the Court must dismiss the Second Amended Complaint for lack of subject matter jurisdiction, and compel TracFone to submit its claims to binding arbitration.

In its Second Amended Complaint, TracFone points out that Simply Wireless (Virginia)

and TracFone only entered into two agreements, dated November 1, 2007, and December 7, 2015 (which is also executed by Simply Wireless of Miami, Inc.). *See* DE 33 at ¶ 20. And, as noted above, TracFone fails to attach the October 12, 2011 Agreement. But that does not allow TracFone to ignore the clearly broad arbitration language of the October 12, 2011 Agreement and bring its claims in this Court. Under Florida law, even a non-signatory to an arbitration provision may enforce that provision against a signatory under circumstances such as those presented here.

As plaintiff is fully aware, the doctrine of equitable estoppel allows a non-signatory to enforce the provisions of a contract against a signatory, including an agreement to arbitrate. *See Gunson v. BMO Harris Bank, N.A.*, 43 F.Supp.3d 1395, 1401 (S.D. Fla. 2014) ("Equitable estoppel applies when the signatory raises allegations of concerted misconduct by both the non-signatory and one or more of the signatories to the contract.")[3] citing *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947-48 (11th Cir. 1999) (noting equitable estoppel is warranted where claims against non-signatory were "based on the same facts and are inherently inseparable" from the claims against the signatory) (citation omitted) *abrogated on other grounds*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009). The Eleventh Circuit noted the purpose behind requiring arbitration in those circumstances: "Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *MS Dealer Serv. Corp.*, 177 F.3d at 947 (citation omitted).

Here, as in *Gunson* and *MS Dealer Serv. Corp.*, TracFone has alleged conduct by Defendants that was "substantially interdependent and concerted." *Id. See also Lopez v.*

---

[3] TracFone's counsel represented the defendant in *Gunson* who successfully moved to compel arbitration.

*UnitedHealth Group, Inc.*, Case No. 8:14-cv-2925-T-30AEP, 2014 WL 404123, *4 (M.D. Fla. Dec. 30, 2014) (allowing non-signatory to compel arbitration where plaintiff alleged "concerted conduct between signatories and non-signatories"); *Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed. Appx. 475 (11th Cir. 2012) (affirming application of equitable estoppel to require arbitration where claims against non-signatory were "inextricably intertwined" with claims against signatory); *Morselife Foundation, Inc. v. Merrill Lynch Bank and Trust Co., FSB*, No. 09-81143-CIV, 2010 WL 2889932, * 4 (S.D. Fla. July 21, 2010) (granting motion to compel arbitration even where plaintiff had dropped signatory to arbitration provision from amended complaint; finding none of the allegations against the remaining party could "be considered without analyzing the alleged conduct of employees of the other [dropped] signatory").[4]

In its initial Complaint, TracFone brought all of its claims against both Defendants in seven counts, making no distinction between the Defendants as to which was responsible for each of the alleged activities. *See* Complaint [DE 1], generally. At pages 6-9 of its original Complaint, TracFone made allegations about "Defendants' Misconduct" and the "Substantial Harm Caused by Defendants' Misconduct." Thereafter, in its Amended Complaint, although TracFone attempted to clarify the alleged improper actions of each Defendant, TracFone again made allegations concerning the concerted activities of both Defendants, labeled as "Defendants' Misconduct" and the "Substantial Harm Caused by Defendants' Misconduct." DE 9 at 7, 8.

---

[4] It is difficult to imagine how TracFone can credibly argue that claims against the "non-signatories" to the relevant arbitration clause are not subject to arbitration when TracFone itself viewed the parties and transactions as intertwined. For example, TracFone addressed its October 27, 2015 Termination Letter to Simply Wireless of Miami, Inc. d/b/a/ Simply Wireless. *See* SAC, Exhibit D [DE 33-4]. And, in the Second Amended Complaint, TracFone argues that Simply Wireless (Virginia) is the same as Mobile Now. *See* SAC [DE 33] at ¶ 17. To selectively argue now, in an attempt to avoid arbitration, that some of the Simply Wireless companies are considered one and the same while others are not, even though it is clear that TracFone treated them all interchangeably, is stunningly disingenuous.

TracFone alleged that, due to Defendants' concerted conduct, Defendants damaged TracFone and TracFone "cannot ascertain the exact amount of damage without an accounting from Defendants." DE 9 at ¶ 40. TracFone also alleged that "Defendants' Improper Airtime Resale Business substantially harms TracFone;" that "Defendants' conduct has also caused TracFone to suffer a direct financial loss;" and that "Defendants' improper conduct has caused TracFone to receive no revenue from these sales." DE 9 at ¶¶ 44, 45.

Importantly, in its Amended Complaint, TracFone specifically alleged that it "delivered hundreds of thousands of promotional Airtime Service PINs to *Simply Wireless of Miami*." DE 9 at ¶ 35 (emphasis added); *see also* ¶¶ 26, 27, 36, 54, 94, 96, 109, 115 (alleging that Airtime Service PINs were provided by TracFone to *Simply Wireless of Miami*). TracFone then specifically alleged that *Simply Wireless of Miami* "improperly separated" the items and transferred them to Simply Wireless (Virginia), which then sold them to customers. DE 9 at ¶ 36; *see also* ¶¶ 55, 56, 61, 62, 64, 77, 80, 82, 97, 98, 100, 116, 117 (alleging *Simply Wireless of Miami* transferred the Airtime Service PINs to Simply Wireless (Virginia)). TracFone alleged that Defendants acted together to cause harm to TracFone. *See, e.g.*, DE 9 at ¶ 53 (alleging Defendants acted "in concert"); *see also* ¶¶ 66, 79, 84, 103 ("Defendants' coordinated conduct…:"); ¶ 78 (Simply Wireless of Miami gave "aid and assistance" to Simply Wireless (Virginia)). Notably, in Count Four of the Amended Complaint, TracFone alleged a cause of action against Simply Wireless (Virginia) for unjust enrichment, alleging specifically that "Simply Wireless (Virginia) *is not a party to the Handset Program Agreement*." DE 9 at ¶ 113.

In response to these allegations, Simply Wireless moved to dismiss on the basis that the alleged conduct was so interrelated that TracFone's claims against the non-signatory (Simply Wireless (Virginia)) could not be considered without analyzing the conduct of the signatory

(Simply Wireless of Miami); therefore, those claims were inextricably intertwined, and the doctrine of equitable estoppel allowed the non-signatory (Simply Wireless (Virginia)) to compel TracFone to pursue its claims in arbitration. *See* Simply Wireless's Motion to Dismiss Amended Complaint [DE 11] at 8-11. (citing *Gunson*; *MS Dealer Serv. Corp.*; *Lopez*; *Escobal*; *Morselife Foundation, Inc.*). Based on the applicable case law, it was clear that the causes of action based on this concerted conduct belonged in arbitration.

In response, and in an obvious effort to salvage its claims from arbitration, TracFone filed a Motion for Leave to assert a Second Amended Complaint. In this revised pleading, TracFone abandons its prior allegations in their entirety, now alleging that *Simply Wireless (Virginia)* and/or Mobile Now, and not Simply Wireless of Miami, is the entity that purchased the Airtime Service PINs from TracFone. *See* SAC [DE 33] at ¶¶ 23-33, 50-55, 83, 105-106, 122, 124, 127-128, 136-138, 190, 192. TracFone also now alleges that *Simply Wireless (Virginia)*, and not Simply Wireless of Miami, "improperly separated" the items. *See* SAC [DE 33] at ¶¶ 32-33, 51-55, 71, 84-85, 105-106, 125-128, 137-138, 193. In yet another complete reversal from its allegations in the Amended Complaint, TracFone also now alleges that the agreements between Simply Wireless of Miami and TracFone "do not address the conduct and products at issue in this litigation – the improper resale of promotional Service PINs or sales of TracFone devices on HSN or other similar platforms." DE 33 at ¶ 23.[5]

Although not rising to the level of judicial estoppel, TracFone's contradictory factual

---

[5] Defendants do not refute the fact that the Simply Wireless of Miami contracts with TracFone do not address the bundling of Airtime Service PINs with handsets, but that is the case with each of the relevant contracts between the Simply Wireless companies and TracFone. Contrary to the basic premise underlying TracFone's entire case, **none** of these agreements provides that the Airtime Service PINs must be sold only as a bundle with a handset. And, none of the relevant agreements provides for what is to be done with Airtime Service PINs that remain unsold after a marketing campaign with the TV networks.

allegations reveal its desperation to maintain its infirm claim here in federal court, rather than in arbitration where, if there is any merit to them (which Defendants dispute), they belong. But on a motion to dismiss, this Court should apply the *Twombly/Iqbal* plausibility standard in reviewing the pleadings and allegations. Here, TracFone is attempting to allege its way around the arbitration provision by contradicting its prior allegations, ignoring a clearly applicable agreement, and warping the facts to an implausible conclusion – that Simply Wireless (Virginia) and not Simply Wireless of Miami was the entity with which it was doing business since October 2011 and for all of TracFone's handsets in all of Simply Wireless's marketing outlets. The fact that this case is at the motion to dismiss stage does not bar the Court from applying its judicial experience and common sense to determine whether TracFone's allegations are plausible. *See Abecassis*, 2010 WL 9452252, at *2 (citing *Iqbal*, 129 S. Ct. at 1950). Indeed, these are the types of "shotgun" allegations, which are not supported by the relevant documents, that the *Twombly/Iqbal* plausibility standard was designed to avoid. *Id.*

Moreover, because this motion poses a factual attack on the Court's jurisdiction, TracFone's allegations are not afforded the heightened presumption allegations normally enjoy on a motion to dismiss. *See Bell v. Atlantic Trucking Co.* TracFone has not met its "heavy burden" to convince this Court that the arbitration provision does not apply to its claims. *See Stone v. E.F. Hutton & Co., Inc.*; *Green Tree Fin. Corp.-Ala. v. Randolph.*

**V.   Counts One, Two, and Three Should be Dismissed because TracFone Fails to Allege a Cause of Action Against Simply Wireless (Virginia) and Mobile Now Under 18 U.S.C. § 1030.**

**A.   TracFone's Allegations Do Not Meet Applicable Pleading Standards.**

At Counts One, Two, and Three, TracFone sets forth claims against Simply Wireless (Virginia) and Mobile Now for alleged violations of the Computer Fraud and Abuse Act, 18

U.S.C. § 1030 ("CFAA"). But TracFone has failed to plead facts supporting these claims.

### 1.    TracFone has not Alleged Defendants Accessed its Computer.

To successfully assert a claim under the Sections 1030(a)(5)(C) and 1030(a)(4) of the CFAA, a plaintiff is required to plead that a *defendant accessed* the plaintiff's "protected computer" (as defined by the statute) without authorization, with respect to a claim under §1030(a)(5)(C), or in such a manner that exceeded authorization, with respect to a claim under §1030(a)(4). *See, e.g., Lockheed Martin Corp. v. Speed*, 2006 WL 2683058, *5 (M.D. Fla. 2006) (setting forth distinction between provisions of act that require access to be unauthorized altogether and those that require that, if authorized, the access exceeded authorization). Yet, TracFone has not properly alleged that Defendants improperly accessed TracFone's protected computer.

TracFone alleges that ***customers*** activate their service either themselves or with assistance from TracFone's customer service by using TracFone personal identification numbers ("Airtime Service PINs"). *See* SAC, DE 33 at ¶¶ 15, 44. TracFone claims that "hundreds of thousands of free Airtime Service PINs" it supplied to Defendants as part of a wireless handset sales program were not bundled by Defendants with the TracFone wireless phones but rather were sold by Simply Wireless separately. DE 33 at ¶¶ 50-52. TracFone then alleges that the Airtime Service PINs "were obtained by end-users … or were used in TracFone devices phones sold by other, unauthorized retailers." DE 33 at ¶ 52. As a result, TracFone claims it was damaged because TracFone "has not received revenue" from the sale of the Airtime Service PINs. DE 33 at ¶ 53. The activity of which TracFone complains does not establish that Defendants access TracFone's systems to activate Airtime Service; in fact, TracFone has plead just the opposite by alleging that the customers access TracFone's computers to activate service.

In analyzing these allegations to determine whether TracFone has properly set forth a claim under §§1030(a)(5)(C) and (a)(4), the "two-pronged approach" set forth by the Eleventh Circuit in *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d at 1290 (applying *Iqbal*) is helpful. First, the Court should eliminate the conclusory allegations – specifically those allegations set forth in ¶ 85 (where TracFone concludes that "the Simply Wireless Virginia Entities obtained access to TracFone's proprietary computer systems by aiding, abetting, encouraging, facilitating or otherwise assisting end-user customers to access TracFone's wireless network…"); ¶ 89 (where TracFone concludes that Defendants "exceeded their authorized access…by selling TracFone's promotional Service PINs to end-user customers and then aiding, abetting, encouraging, facilitating or otherwise assisting these customers in accessing TracFone's proprietary computer system…"); ¶ 106 (where TracFone concludes that Defendants, "obtained access to TracFone's proprietary computer system, or aided, abetted, encouraged, facilitated or otherwise assisted others in obtaining access…"); and ¶ 108 (where TracFone concludes that Defendants, "knowingly and with intent to defraud accessed TracFone's proprietary computer system and telecommunications network by aiding, abetting, facilitating or otherwise assisting the end-user purchasers…"). None of these conclusory allegations is supported by any actual fact, and thus none should be taken as true for purposes of this motion. What is left in terms of factual allegations is that TracFone alleges Defendants sold Airtime Service PINs to customers and customers accessed the computers via the Airtime Service PINs – these factual allegations do not support a claim for violation of the CFAA because they does not allege that Defendants improperly accessed TracFone's computers. *See Lockheed Martin Corp.*

Understanding that it cannot allege that Defendants access TracFone's computers without authorization, TracFone has alleged that Simply Wireless has "aided and abetted" end-user

customers to access TracFone's computers and wireless network with airtime. DE 33 at ¶¶ 85, 87, 89, 90, 91, 106, 108. However, there is no civil liability for "aiding and abetting" under the CFAA. *See Trademotion, LLC v. Marketcliq, Inc.*, 857 F.Supp.2d 1285, 1294 (M.D. Fla. 2012) citing *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, 09-CV-00422-PMP, 2011 WL 2847712, *3 (D. Nev. July 15, 2011) (dismissing with prejudice claim for violation of § 1030 because "aiding and abetting liability does not exist under § 1030"; noting "[h]ad Congress intended for aiding and abetting liability to apply, it could and would have said so."). Without alleging directly that Defendants themselves improperly accessed the computers, TracFone has not properly alleged a claim under the CFAA. *See Scottrade, Inc. v. BroCo Investments, Inc.*, 774 F. Supp. 2d 573, 584 (S.D.N.Y. 2011) (noting that "the rule of lenity counsels a narrow reading" of the CFAA in a civil case; dismissing CFAA claim because plaintiff did not allege defendant accessed its computers without authorization but rather that it was part of scheme to hack and benefitted from it) (citations omitted).

Moreover, TracFone has not alleged, and cannot allege, that the customers who accessed TracFone's computers had any knowledge of Simply Wireless's alleged improper conduct or were knowingly taking steps to further that improper conduct, which is essential to a claim of aiding and abetting. *See, e.g., Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014) ("As at common law, a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission.") And, TracFone has not alleged that the customers themselves were engaged in any kind of crime that was being "aided and abetted" by Simply Wireless. There is simply no "conspiracy" or "aiding and abetting" between Simply Wireless and the customers. As such, TracFone has not properly plead a claim against Simply Wireless for violation of the

CFAA.

### 2.   TracFone Has Not Alleged Simply Wireless' Receipt of the Airtime Service PINs was Unauthorized.

Moreover, TracFone is required to allege that its computers were accessed "without authorization" (under §1030(a)(5)(C) and §1030(a)(6)) or "without authorization, or exceed[ing] authorization" (under §1030(a)(4)). Although reciting the statutory language in ¶¶ 86-89, 91, 108 for purposes of setting forth the elements of the claims in the respective counts, TracFone's allegation that access to TracFone's computers was not authorized is not plausible when TracFone alleges that TracFone itself provided the Airtime Service PINs to Defendants. *See, e.g.,* SAC at ¶¶ 50-52 and invoices/purchase orders attached as Composite Exhibit C to Second Amended Complaint [DE 33-3].[6]

There is nothing in any of the relevant agreements between the parties that prevents Simply Wireless from selling Airtime Service PINs separately to customers. Importantly, TracFone has not alleged, and there is no evidence to support an allegation, that TracFone's customers who purchased Airtime Service PINs, even as part of a bundle with a handset, could not use those PINs to add service to any TracFone handset, rather than only using the PINs to add service to a new phone. The very premise upon which TracFone supports its entire case is not supported by any agreement between the parties. Nor can TracFone point to any mechanism

---

[6] The allegations of this case differ greatly from other litigation TracFone has brought under the CFAA and the Lanham Act. In *TracFone Wireless, Inc. v. Adams*, 98 F.Supp.3d 1243, 1256 (S.D. Fla. 21015), the *pro se* defendant, who admitted his illegal conduct and agreed to an order enjoining his continued behavior, had never had a business relationship with TracFone and was stealing Airtime Service PINs. In *TracFone Wireless, Inc. v. Trung Truc*, 281 F.R.D. 692, 695 (S.D. Fla. 2012) and *TracFone Wireless, Inc. v. Cabrera*, 883 F.Supp.2d 1220, 1230 (S.D. Fla. 2012), the defaulted defendants were engaged in ongoing activity of stealing Airtime Service PINs and selling them to third parties. Here, TracFone has not alleged, and cannot support an allegation, that Simply Wireless "stole" Airtime Service PINs, but rather the PINs were provided directly by TracFone to Simply Wireless pursuant to the parties' business relationship.

put in place by it that somehow rendered "unauthorized" any redemption of an Airtime Service PIN in any manner other than to commence service with a new handset. TracFone claims that the customers' use of the Airtime Service PINs separate from a new handset was "unauthorized," but that status was not communicated and could not have been communicated to those customers who purchased functional Airtime Service PINs that were sold and provided by TracFone to Simply Wireless. Because TracFone cannot support an allegation that the customers' use of the Airtime Service PINs was "unauthorized," its claims under the CFAA fail.

### 3.   TracFone Has Not Alleged Fraud with Particularity.

Despite the fact that Counts One, Two, and Three sound in fraud, TracFone's allegations do not even attempt to satisfy the heightened standard imposed by Federal Rule of Civil Procedure 9(b). *See Ray v. Spirit Airlines, Inc.,* No. 12-61528-Civ-Scola, 2015 WL 5168367, at *2 (S.D. Fla. July 27, 2015) (Rule 9(b)'s heightened pleading standard requires a party alleging fraud or mistake to state with particularity circumstances constituting fraud or mistake); *see also Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires plaintiff to state the "who, what, when, where, and how" of alleged misconduct).

As it relates to pleading fraud under the CFAA, *Oracle America, Inc. v. Service Key, LLC,* No. C 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. December 3, 2012), is particularly instructive. In that case, Oracle supplied hardware and software systems to customers, who, upon purchasing the systems, had an option to also purchase an annual contract for related support services for which they were provided with unique access credentials that allowed them to access Oracle's support websites and download support software. *Id.* at *1. Only customers who had this agreement were authorized "to receive software updates from Oracle's websites." *Id.* Oracle alleged that Defendant DLT Federal Business Systems Corporation fraudulently used its access to Oracle's system "to obtain Oracle's proprietary software patches and updates which it then

provided to its customers even though they lacked support agreements with Oracle" and that it also "distributed and/or facilitated the distribution of access credentials to Oracle's website to third parties who were unaware that DLT lacked the authority to distribute such credentials." *Id.* Oracle claimed that DLT violated the CFAA, 18 U.S.C. § 1030(a)(2)(C), (a)(4) and (a)(6)(A). *Id.* at *2. The district court held that Oracle's allegations failed to meet Rule 9(b)'s heightened pleading requirements, finding that, even though Oracle provided "some specific instances of DLT's allegedly fraudulent conduct," Oracle's overall allegations still fell short because it failed to allege "with specificity, each incident of fraudulent conduct that comprises its CFAA claim against DLT." *Id.* at *7.

Here, TracFone has failed to satisfy the heightened standard imposed by Rule 9(b). TracFone does not explain how Simply Wireless allegedly improperly "accessed" TracFone's computers, much less provide any detail as to who accessed the computers, what was accessed or obtained, or when, where, and how these activities took place. The allegations are general and repetitive, and detail is scant. Notably, TracFone has had an opportunity to provide further detail in its Amended Complaint and Second Amended Complaint and has failed to do so. Accordingly, Counts One, Two, and Three of the Complaint should be dismissed for failure to meet Rule 9(b) and Rule 12(b)(6) pleading standards.

## B.    TracFone is not Entitled to Injunctive or Other Equitable Relief.

At its core, TracFone's claim is that it was allegedly not paid for Airtime PINs it claims it gave to Simply Wireless for "free," and TracFone wants to be paid for them. TracFone claims it "received no revenue from the Simply Wireless Virginia Entities as a result of the unauthorized sale of the Airtime Service PINs" and claims Defendants "earned a substantial profit by selling promotional Service PINs as part of its Improper Service Resale Business." DE 33 at ¶¶ 34 and

35, respectively. Simply put, TracFone wants to be paid. Claims of this nature are claims for damages, not claims for injunctive relief. There is no irreparable harm, and TracFone has not even attempted to allege it, other than making conclusory allegations. Because there is no irreparable harm, TracFone is not entitled to the injunctive and other equitable relief it seeks.[7]

## VI.   TracFone's Allegations Do Not Support Claims Based on the December 7, 2015 Agreement for Fraudulent Inducement, Breach of Contract or Unjust Enrichment.

At Counts Five, Six, and Seven TracFone attempts to set forth claims for fraudulent inducement, breach of contract, and unjust enrichment, respectively, but these claims are also poorly plead and are unsupported by TracFone's own allegations. TracFone alleges that, on October 27, 2015, "TracFone provided Defendants with ninety (90) days' notice of its intention to terminate the business relationship, including all agreements and understandings, between the parties." DE 33 at ¶¶ 38; *see also* ¶¶ 142 and 157 and Exhibit E [DE 33-5] (the "Termination

---

[7] Nor can TracFone rely on its unsupported claims for injunctive relief to avoid arbitration. The October 12, 2011 Agreement provided a narrow exception to its arbitration provision, allowing only a claim in federal court for "a temporary restraining order or other injunctive relief to enforce any provision of this Agreement to prevent irreparable harm to the filing party." **Exhibit C**, pages 8-9. But TracFone has not brought such a claim in this Court. TracFone has not brought a claim under the October 12, 2011 Agreement. And, TracFone cannot point to any provision of the October 12, 2011 Agreement it is seeking to enforce. At its factual core, TracFone's complaint is that, instead of bundling Airtime Service PINs, Simply Wireless "separated" the PINs and then sold them to customers for profit. Yet, TracFone has not cited, and cannot cite, to any provision of the October 12, 2011 Agreement (nor any other relevant agreement between the parties) that requires Simply Wireless to "bundle" airtime PINs with telephone handsets or prohibits Simply Wireless from selling airtime PINs separately – no such provision exists. In its Prayer for Relief, rather than seeking enforcement of a provision of the October 12, 2011 Agreement, TracFone seeks injunctive relief against Defendants and enjoining Defendants "from engaging in the unlawful practices described in this [Second] Amended Complaint." [DE 33 at 44] TracFone's claim for injunctive relief seeks to curb general behavior of which it disapproves, but does not "seek to enforce any provision" of the October 12, 2011 Agreement and, thus, does not fall within the narrow exception from arbitration agreed to by the parties.

Notice").[8] Thus, the governing agreements and understandings between the parties would remain in place for 90 days, or until January 25, 2016. TracFone then alleges that it demanded that Simply Wireless agree "to schedule a meeting with TracFone to discuss various outstanding issues," (DE 33 at ¶ 145, 159) and that "Defendants knew or should have known that their statement that they were amenable to scheduling this meeting… was false." DE 33 at ¶ 148. These allegations do not support the claims set forth in Counts Five, Six, and Seven.[9]

TracFone's very allegations negate its claims, because it is clear that TracFone did not "act in reliance" on the alleged misrepresentation, that TracFone did not confer on Simply Wireless a benefit, and TracFone did not suffer damages. TracFone's Termination Notice provided that it would "take effect ninety (90) days from today's date in accordance with the terms of our written agreements." Termination Notice, DE 33-5. Therefore, until the 90-day period expired, the business relationship would continue pursuant to the parties' current

_____

[8] Notably, even before providing the Termination Notice to Simply Wireless, TracFone met with Simply Wireless's marketing partners and told them they would be cutting Simply Wireless out of the relationships. And, after serving Simply Wireless with the Termination Notice, TracFone represented that it would continue to cooperate with Simply Wireless to supply the lucrative contracts into which the parties were committed, but then TracFone began to stall and hedge on its commitments, causing severe damage to Simply Wireless's lucrative relationship with its marketing partners.

[9] To the contrary, TracFone's allegations seem to concede that it was TracFone that fraudulent induced Simply Wireless, because TracFone never intended to abide by the December 7, 2015 Agreement at the time it was executed. To wit, the December 7, 2015 Agreement, which was executed by TracFone on Tuesday, December 8, 2015, contained the clause providing that the parties would meet within ten days (*i.e.*, by December 18, 2015) in an effort to resolve pending disputes and discuss future business. In a remarkable display of bad faith, less than three days after signing the Agreement, on Friday, December 11, 2015, TracFone filed its 22-page, seven-count Complaint [DE 1] in this Court. This preemptive strike made it apparent that, even as TracFone was signing the Agreement on December 8, 2015, having just negotiated a ten-day settlement window for the parties to resolve their differences, TracFone was actively discussing with its lawyers the federal lawsuit it intended to file days later. With incredible *chutzpa*, TracFone now accuses Defendants of breach (and fraud) for not following through on a future agreement to meet to discuss settlement, an agreement on which TracFone itself never intended to follow through.

agreements and understandings. Despite this clear and simple fact, TracFone claims that Simply Wireless's representation "was a material condition to TracFone's…*continuation of the parties' existing business relationship* during the 90-day winding-down period." DE 33 at ¶ 147 (emphasis supplied).

Essentially, TracFone complains that Simply Wireless's representation caused TracFone to continue in a business relationship with Simply Wireless; but that business relationship was already in existence and ongoing – TracFone had only provided notice that it intended to sever the relationship effective January 25, 2016, and, until that date, the parties maintained their business relationship under the current agreements and understandings. Simply Wireless's purported representation did not cause any change in position in the parties' relationship, to support a fraudulent inducement claim, nor did TracFone "confer a benefit" on Simply Wireless, to support an unjust enrichment claim, by agreeing to maintain a relationship that was already in existence. *See, e.g., Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209-10 (Fla. 3d DCA 2003) (listing elements of claim for fraudulent inducement, as: (i) defendant misrepresented material fact; (ii) defendant knew at time misrepresentation was made it was false; (iii) defendant intended misrepresentation to induce plaintiff to rely and act on it; and (iv) plaintiff's justifiable reliance on misrepresentation caused it to suffer damages); *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (noting elements of claim for unjust enrichment, including that plaintiff conferred benefit on defendant).[10]

---

[10] TracFone also fails to properly allege a claim for fraudulent misrepresentation because "Florida law is well-settled that a misrepresentation must ordinarily relate to a past or existing fact to be the basis for a claim for relief sounding in fraud." *Sleight v. Sun and Surf Realty, Inc.*, 410 So. 2d 998, 999 (Fla. 3d DCA 1982). "A false statement amounting to do something in the future is not actionable." *Id.* Because TracFone alleges that Simply Wireless's representation related to something in the future, that representation cannot form the basis of a fraudulent misrepresentation claim. An exception to this rule lies where a statement related to the future is

TracFone has also failed to allege any damages resulting from Simply Wireless's alleged failure to meet with TracFone, which is an essential element of its claims for breach of fiduciary duty and breach of contract. *See Susan Fixel, Inc.*, 842 So. 2d at 209-10 (listing damages as essential element of fraudulent inducement claim); *Lion Life, LLC v. Regions Bank*, 12-81145-CIV, 2013 WL 2367823, at *2 (S.D. Fla. 2013) (reciting elements of breach of contract: (1) valid contract; (2) material breach; and (3) damages). TracFone only alleges in a conclusory manner that it has been damaged. *See* SAC [DE 33] at ¶¶ 155 and 163 (alleging "TracFone has been damaged"). But TracFone's factual allegations do not support such a conclusion. *See Veteran Corps. of America v. IT Broadcasting VSAT, Inc.*, 13–cv–1131–Orl–37DAB, 2013 WL 6498423, *4 (M.D. Fla Dec. 11, 2013) (dismissing claim where conclusory damages allegations did not "permit an inference that Defendant suffered any financial loss"). Simply put, TracFone could not have been damaged by continuing in a relationship in which it was required to continue based on the terms of its agreements. Because TracFone has not alleged an essential element of breach of fiduciary duty and breach of contract, those claims should be dismissed.[11]

Even if TracFone had properly set forth allegations based on actionable statements, a change or action on reliance on those statements, and compensable damages, which it has not, TracFone's allegations in Count Five do not meet Rule 9(b)'s heightened pleading standards for

made with the positive intention not to perform. *See Gastaldi v. Sunvest Resort Communities, LC*, 08-62076-CIV, 2010 WL 457243, *17 (S.D. Fla. Feb. 3, 2010) (applying exception where party "never intended" to perform); *see also Palmer v. Santa Fe Healthcare Systems*, Inc., 582 So. 2d 1234 (Fla.1st DCA 1991) (Promise made by party as to its future conduct may serve as predicate for fraudulent inducement claim only if promise is made without any intention of performing it). However, here TracFone has not alleged such a "positive intention" but rather alleges that "Defendants knew or should have known" that their representation was "false." DE 33 at ¶ 148.

[11] To the contrary, to the extent TracFone was able to extract the promise from Simply Wireless to meet "in exchange for TracFone's compromise to continue its business relationship" (DE 33 at ¶ 145), it was able to extract such a concession without providing any additional consideration.

fraud claims. *See Ray v. Spirit Airlines, Inc., supra*; *Garfield*, 466 F.3d at 1262. TracFone has not set forth the "who, what, when, where, and how" of the purported fraudulent statements. TracFone has not alleged who made the representation--TracFone does not even distinguish between the Defendants as to who made the representation, much less identify the person who made it. *See* SAC [DE 33] at ¶ 146 ("Defendants represented to TracFone that they were amenable to the meeting…") TracFone has also not alleged what the exact representation was, nor where, when and how the representation was made, nor to whom. Without these necessary details, TracFone's allegations are not set forth with requisite specificity and must be dismissed. Notably, TracFone has now had two opportunities to provide further factual detail – in its Amended Complaint and Second Amended Complaint – and failed to do so.

TracFone's claim for unjust enrichment and disgorgement of profits at Count Seven also fails because it already sets forth a breach of contract claim for the very conduct of which it complains at Count Seven and, therefore, TracFone has demonstrated it has an adequate remedy at law. *See American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F. Supp.2d 1170, 1178 (M.D. Fla. 2005); *see also Martinez v. Wayerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1518-19 (S.D. Fla. 1996) (dismissing claim for unjust enrichment where same conduct was addressed in count for violation of Truth in Lending Act). Moreover, "under Florida law, disgorgement of profits earned is not a remedy for breach of contract," which is essentially what TracFone has alleged, however inarticulately. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1245 (11th Cir. 2009), citing *Burger King Corp. v. Mason,* 710 F.2d 1480, 1494 (11th Cir. 1983).

TracFone alleges that its claim for unjust enrichment is "in the alternative" to its claim for breach of contract. *See* SAC [DE 33] at ¶ 165. However, a claim for unjust enrichment is

barred if it is found that an express contract exists. *See, e.g., Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) ("[U]pon a showing that an express contract exists… the unjust enrichment or promissory estoppel count fails"). Here, there is clearly an express contract – the December 7, 2015 Agreement – the existence of which is not challenged. Thus, TracFone's claim for unjust enrichment necessarily fails.

## VII.    TracFone Fails Adequately to Allege Claims for Trademark Infringement.

Casting about for any sustainable theory of civil liability, at Counts Eight and Nine of the Second Amended Complaint TracFone asserts new claims against Simply Wireless for alleged violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), for, respectively, trademark infringement (pursuant to 15 U.S.C. § 1114) and false designation of origin and unfair competition (pursuant to 15 U.S.C. § 1125(a)). These new counts appear to be based upon Simply Wireless's continued sale of TracFone products on the website shopcelldeals.com following termination of the business relationship between TracFone and Simply Wireless on January 26, 2016. *See* SAC [DE 33] at ¶¶ 174-185 and 186-189. Neither count articulates a cognizable claim for violation of the Lanham Act and, thus, each count warrants dismissal.[12]

In enacting the Lanham Act, Congress "sought to protect two groups: consumers and registered trademark owners." *Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001). Thus, the Lanham Act safeguards consumer expectations "by excluding others

---

[12] On February 29, 2016, counsel for TracFone forwarded to undersigned counsel a draft of its proposed Second Amended Complaint in which TracFone asserted, for the first time, its claims for trademark infringement related to Simply Wireless's continued sales of TracFone products on the ShopCellDeals.com website. On March 8, 2016, undersigned counsel wrote to opposing counsel, notifying counsel that the sales taking place on the ShopCellDeals.com website were the remaining handsets and Airtime Service PINs in Simply Wireless' inventory. *See* March 8, 2016 Electronic Mail Communication attached as **Exhibit E**. Undersigned counsel offered that, if TracFone had objection to Simply Wireless' sale of the remaining inventory, it could repurchase it. TracFone has not responded to this offer and, instead, chose to proceed with its meritless trademark infringement claim.

from using a particular mark and making consumers confident that they can purchase brands without being confused or misled." *Id.* On the other end of the transactional spectrum, the Lanham Act also serves to safeguard trademark owners and prevent other vendors "from acquiring a product that has a different set of characteristics and passing it off as the trademark owner's product." *Id.*

To establish a prima facie case under 15 U.S.C. § 1114, Section 32 of the Lanham Act, for trademark infringement, a plaintiff "must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake, or to deceive." *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F. Supp. 2d 1247, 1259 (S.D. Fla. 2007). To establish a prima facie case under 15 U.S.C. § 1125(A), Section 43(A) of the Lanham Act, for unfair competition and false designation of origin, "a plaintiff must show (1) that the plaintiff had enforceable ... rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1353 (S.D. Fla. 2012) (dismissing Lanham Act claims on a motion to dismiss) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647–48 (11th Cir.2007); *see also Crystal Entertainment & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (citations omitted). "Thus, while Section 32 prohibits trademark infringement and Section 43(a)(1) prohibits unfair competition, both statutory proscriptions center upon practices likely to cause confusion, deception or mistake on the part of the consumer, and consequently, damage to the trademark owner." *Hidalgo Corp.*, 509 F. Supp. 2d at 1259.

Generally, the resale of genuine trademarked goods does not constitute trademark infringement. *Davidoff*, 263 F.3d at 1301. That is because consumers are not confused about the

origin of the goods: "the origin has not changed as a result of the resale." *Id.* (noting that, "even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good does not violate the Act.") This legal theory is known as the "first sale" or "exhaustion" doctrine.

No recent case better illustrates the application of the "first sale doctrine" to TracFone's infirm Lanham Act claims than *Brain Pharma, LLC*. In that case, the plaintiff, a sports nutrition company that manufactured and sold supplements, accused the defendants of violating various provisions of the Lanham Act by selling the plaintiff's products on the defendants' website. *Id.* at 1351. In particular, the plaintiff alleged that one defendant had "misrepresented itself to the public, through its website, as an authorized... agent" of the plaintiff, and another defendant had sold and distributed the plaintiff's products "to retailers and end users unaffiliated with" the plaintiff without authorization. *Id.* The defendants moved to dismiss the complaint, arguing that their resale of the plaintiff's products did not amount to trademark infringement. *Id.* at 1352. The district court applied the "first sale doctrine" and agreed with the defendants that, if they were merely reselling the plaintiff's genuine products, the first sale doctrine barred the plaintiff's claim. *Id.* at 1356. The court held that attaching a printout of the plaintiff's goods offered for sale at the website was insufficient to establish that the defendant "represented itself" as the plaintiff's "authorized agent". *Id.* at 1354. The court then held that the plaintiff had failed to allege facts establishing that the defendants "caused consumer confusion by representing themselves" as an authorized agent of the plaintiff. *Id.*

Like the plaintiff in *Brain Pharma, LLC*, in support of its claims here, TracFone offers a printout of the website and scant, conclusory allegations. Notably, TracFone has not alleged that Simply Wireless sold or presented for sale TracFone handsets or Airtime Service PINs that are in any way materially different from those same products sold by TracFone. (In fact, they are not

different because they are products purchased from (and sold by) TracFone for resale). By failing to plead these specific facts, or even allege any difference (material or not), TracFone has not set forth an actionable violation of the Lanham Act and Counts Eight and Nine of the Second Amended Complaint must be dismissed.

## VIII. The December 7, 2011 Agreement Does Not Support TracFone's Claims in Counts Ten and Eleven.

At Counts Ten and Eleven, TracFone sets forth allegations for breach of contract and breach of the covenant of good faith and fair dealing based on the November 11, 2007 Agreement. These counts fail for two basic reasons, as explained more fully in Sections II.A. and II.B., above. First, contrary to TracFone's misleading allegations at ¶¶ 191, 193-195, 197, 199 the November 11, 2007 does not contain any provision that requires that Airtime Service PINs to be bundled with handsets. Second, the operative agreement between the parties during the relevant time period is the October 12, 2011 Agreement.

Perhaps understanding that none of the relevant agreements, including the November 11, 2007 Agreement, requires Simply Wireless to bundle Airtime Service PINs with handsets nor prevents Simply Wireless from selling the Airtime Service PINs separately, TracFone now throws in a claim in Count Eleven for breach of the Implied Covenant of Good Faith and Fair Dealing under the November 11, 2007 Agreement. SAC [DE 33] at ¶¶ 197-202. But a claim for breach of Covenant of Good Faith "cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) (affirming grant of summary judgment where plaintiff failed "to identify an express contractual provision that has been breached."). The Covenant of Good Faith does not invent contract provisions where the contract is silent and, thus, because there is no express provision of the contract supporting

TracFone's contention that the Airtime Service PINs were required to be bundled and could not be sold separately, its claim under the Covenant of Good Faith also fails.

## IX.    TracFone Does Not Allege a Right to an Accounting.

In Count Twelve of its Second Amended Complaint, TracFone claims that its purported damages "can only be ascertained by way of an accounting inquiry." DE 33 at ¶ 207. Absent from this equitable demand, however, is any mention that a legal remedy – monetary damages in this case - is inadequate, nor has TracFone alleged a fiduciary relationship between itself and Simply Wireless (Virginia). Without pleading as much, TracFone is not entitled to an equitable accounting. *See Guarantee Ins. Co. v. Brand Management Service, Inc.*, 12-61670-CIV, 2013 WL 6768641, at *11 (S.D. Fla. Dec. 20, 2013) (finding under Florida law, party seeking equitable accounting must demonstrate that (1) a fiduciary relationship exists or the questioned transaction is complex and (2) the remedy at law is inadequate). Also, to the extent that damages actually do exist, TracFone may establish those through appropriate discovery, and the suggested equitable accounting is inappropriate. *Guarantee Ins. Co.*, at *11 (finding equitable accounting was inappropriate where party could obtain documents in question through discovery). Because TracFone's has not sufficiently alleged a claim for an equitable accounting, Count Twelve of the Second Amended Complaint should be dismissed.

## Conclusion

For the reasons set forth above, Simply Wireless respectfully requests that the Second Amended Complaint be dismissed with prejudice.

Respectfully submitted,

BROAD AND CASSEL

By:   */s/ Mark F. Raymond, P.A.*
Mark F. Raymond, P.A.
Florida Bar No. 373397
mraymond@broadandcassel.com
Patricia M. Baloyra, Esq.
Florida Bar No. 78270
pbaloyra@broadandcassel.com
Benton Curtis, Esq.
Florida Bar No. 118156
bcurtis@broadandcassel.com
2 S. Biscayne Boulevard, Suite 2100
Miami, Florida  33131
Telephone: (305) 373-9425

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 22nd day of April, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record or parties of record on the Service List below.

By     */s/ Mark F. Raymond, P.A.*
Mark F. Raymond, P.A.

**SERVICE LIST**

Aaron S. Weiss, Esq.
Email: aweiss@carltonfields.com
Carlton Fields Jorden Burt, P.A.
100 Southeast Second Street, Suite 4200
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

James B. Baldinger, Esq.
Email: jbaldinger@carltonfields.com
Carlton Fields Jorden Burt, P.A
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 659-7070
Facsimile: (561) 659-7368