UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-24565-CIV-MORENO/O'SULLIVAN

TRACFONE WIRELESS, INC.,

        Plaintiff,

v.

SIMPLY WIRELESS, INC., a Virginia
corporation, d/b/a SHOPCELLDEALS,
MOBILE NOW, INC., a Virginia corporation,
and SIMPLY WIRELESS OF MIAMI, INC. a
Florida corporation,

        Defendants.
_____/

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER comes before the Court on the Defendants Simply Wireless, Inc.,
Mobile Now, Inc., and Simply Wireless of Miami, Inc.'s, Motion to Dismiss Second
Amended Complaint or, in the Alternative, Motion to Compel Arbitration (DE# 51,
4/22/16). This motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)
for a report and recommendation. <u>See</u> Order of Referral to Magistrate Judge O'Sullivan
for All Pretrial Proceedings (DE# 43, 4/5/16). Having reviewed the applicable filings and
the law and having held a hearing on September 1, 2016, the undersigned respectfully
RECOMMENDS that Defendants Simply Wireless, Inc., Mobile Now, Inc., and Simply
Wireless of Miami, Inc.'s, Motion to Dismiss Second Amended Complaint or, in the
Alternative, Motion to Compel Arbitration (DE# 51, 4/22/16) be **GRANTED in part and
DENIED in part** for the reasons stated herein.

**BACKGROUND**

On March 21, 2016, the plaintiff filed a second amended complaint against defendants Simply Wireless, Inc. (hereinafter "Simply Wireless Virginia"), Mobile Now, Inc. (hereinafter "Mobile Now"), and Simply Wireless of Miami, Inc. (hereinafter "Simply Wireless Miami"). See Second Amended Complaint for Damages and Injunctive Relief and Demand for Jury Trial (DE# 33, 3/21/16) (hereinafter "SAC").

The SAC alleges the following causes of action against all defendants: fraud in the inducement of the Transition Agreement in violation of Florida common law (Count 5); breach of Transition Agreement in violation of Florida common law (Count 6) and unjust enrichment (also known as claim for contract implied at law) in violation of Florida common law Transition Agreement (Count 7). See SAC (DE# 33, 3/21/16). The SAC alleges the following causes of action against defendants Simply Wireless Virginia and Mobile Now (collectively referred to as the "Simply Wireless Virginia Entities"): unauthorized access to a protected computer in violation of 18 U.S.C. § 1030 (A)(5)(C), the Computer Fraud and Abuse Act (hereinafter "CFAA") (Count 1); unauthorized access to a protected computer with intent to defraud in violation of 18 U.S.C. § 1030 (A)(4) of the CFAA (Count 2); knowingly trafficking in password information in violation of 18 U.S.C. § 1030 (A)(6) of the CFAA (Count 3); unjust enrichment (also known as claim for contract implied at law) in violation of Florida common law (Count 4); breach of the November 11, 2007 Agreement (Count 10); breach of the implied covenant of good faith and fair dealing in violation of Florida common law: November 11, 2007 Agreement (Count 11) and accounting (Count 12). Id. Finally, the SAC alleges causes of action against defendant Simply Wireless Virginia for federal trademark infringement

2

in violation of 15 U.S.C. § 1114, Section 32 of the Lanham Act (Count 8) and federal false designation of origin and unfair competition in violation of 15 U.S.C. § 1125 (A), Section 43(A) of the Lanham Act (Count 9). Id.

On April 22, 2016, the defendants moved to dismiss the SAC. See Defendants Simply Wireless, Inc., Mobile Now, Inc., and Simply Wireless of Miami, Inc.'s, Motion to Dismiss Second Amended Complaint or, in the Alternative, Motion to Compel Arbitration (DE# 51, 4/22/16) (hereinafter "Motion"). The plaintiff filed its response in opposition on May 17, 2016. See TracFone's Response to Defendants' Motion to Dismiss or, in the Alternative, Motion to Compel Arbitration (DE# 55, 5/17/16) (hereinafter "Response"). The defendants filed their reply on June 7, 2016. See Defendants Simply Wireless, Inc., Mobile Now, Inc., and Simply Wireless of Miami, Inc.'s, Reply in Support of Their Motion to Dismiss Second Amended Complaint or, in the Alternative, Motion to Compel Arbitration (DE# 58, 6/7/16) (hereinafter "Reply").

The undersigned held a hearing on the instant motion on September 1, 2016. This matter is ripe for adjudication.

**FACTS**

**I.     November 11, 2007 Agreement**

On November 11, 2007, the plaintiff and Simply Wireless Virginia entered into an agreement for the HSN/Simply Wireless Handset Program. See November 11, 2007 Agreement (DE# 51-1 at 2-4, 4/22/16). Under the November 11, 2007 Agreement, the plaintiff would provide Simply Wireless Virginia with Net 10 Motorola W375 handsets together with $15.00 Airtime Cards (hereinafter "PINs") to be sold on the Home

3

Shopping Network ("HSN"). Id. The plaintiff provided Simply Wireless Virginia with these handsets at $56.00 per handset. Id. The PINs were included at no cost to Simply Wireless Virginia. Id. The agreement further provided that: "After all programs/promotions with HSN and Simply Wireless have been completed, Simply Wireless may return any new handset inventory (Net 10 Motorola W375) to TracFone for full credit." Id. The November 11, 2007 Agreement did not address the return of the PINs. Similarly, the November 11, 2007 Agreement provided detailed instructions for the return of defective handsets and provided a TracFone limited warranty, but did not provide any directions for the return of PINs. Id.

## II.     The October 12, 2011 Agreement

On October 12, 2011, the plaintiff and Simply Wireless Miami entered into an agreement for the TracFone Wireless, Inc. Handset Program. See October 12, 2011 Agreement (DE# 51-3 at 2-10, 4/22/16). The agreement governed eight different handset models[1] and authorized Simply Wireless Miami to solicit the following merchants: HSN, QVC, Amazon, EBay, woot.com, Buy.com, Groupon and infomercials (direct TV sales). See October 12, 2011 Agreement at Exhibit A. The October 12, 2011 Agreement contained a "Prohibition Against Certain Unauthorized Resale Activity" at Exhibit B, which stated in part:

> **Simply Wireless warrants and represents that it has not at any time in the past engaged in Unauthorized Bulk Reselling Activity** and that it is not now engaged, and will not in the future engage, in Unauthorized Bulk Reselling Activity. "Unauthorized Bulk Reselling Activity" is defined as

---

[1] The handset models available under the October 12, 2011 agreement were: T105 (GSM), LG420 (GSM), LG500G (GSM), LG800G (GSM), NET10 T245 (GSM), NET10 LG900 (GSM), NET10 LG800G (GSM) and NET10 T404G (GSM).

**the unauthorized purchase and/or sale of Phones with the knowledge that the Phones will not be activated for use on TracFone's mobile virtual network by an end-user customer; the unauthorized computer unlocking/reflashing of Phones; tampering with TracFone's proprietary prepaid software on the Phone; and/or sale and/or shipment of Phones to an overseas buyer**.

October 12, 2011 Agreement at Exhibit B (DE# 51-3 at 7, 4/22/16) (emphasis added).

The October 12, 2011 Agreement provided that:

**All purchase orders submitted to and accepted by TracFone for Handsets are and shall be subject to this Agreement** and shall be deemed to incorporate the terms and conditions of this Agreement, whether or not so specified in such Purchase Orders. Purchase orders will not modify, supplement or conflict with the terms of this Agreement, unless specifically agreed to in writing otherwise.

Id. at 2-3 (emphasis added). It further provided that "[a]ny action arising from or relating to this Exhibit B to the Agreement  [the Prohibition Against Unauthorized Resale Activity] shall be brought in a court of competent jurisdiction, whether state or federal, which is located in Miami-Dade, Florida." Id. at 8. The October 12, 2011 Agreement also contained an arbitration provision which stated:

Arbitration. **All controversies, disputes or claims arising between the parties to this Agreement or arising out of or relating to the relationship of the parties to this Agreement (together with any counterclaims and disputes under or in connection with other agreements between the Parties) shall be submitted for arbitration** before a single arbitrator in accordance with the Rules of the American Arbitration Association ("AAA"). Such arbitration shall be conducted in Miami, Florida. Any counterclaim not brought within thirty (30) days after receipt of the arbitration notice shall be barred. The single arbitrator shall have the right to include in the award any relief which it deems proper in the circumstances, including money damages (with interest on unpaid amounts from the due date), legal fees and costs in accordance with this Agreement; provided that such arbitrator shall not be entitled to award exemplary, special, punitive, indirect or consequential damages. The award and decision of the arbitrator shall be conclusive and binding on all parties hereto and judgment on the award may be entered in any court of

competent jurisdiction. Each party hereto waives any right to contest the validity or enforceability of such award. **This provision shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.** The arbitration shall be the exclusive remedy of the parties to the dispute regarding claims or counterclaims presented to the arbitrator. **Notwithstanding the foregoing, either party has the right to file for a temporary restraining order or other injunctive relief in a court of competent jurisdiction in order to enforce any provision of this Agreement to prevent irreparable harm to the filing party**.

Id. at 9-10 (emphasis added).

### III.    Termination Letter

On October 27, 2015, the plaintiff sent a letter to Simply Wireless Miami stating that it was "hereby terminating any and all agreements and understandings with Simply Wireless, including, but not limited to, the letter agreements dated November 1, 2007, March 3, 2011, and October 12, 2011, each as amended, supplemented or modified." See Termination Letter (DE# 33-4 at 2, 3/21/16). The Termination Letter advised that the effective date of the termination was ninety (90) days from the date of the letter, January 25, 2016. Id. The Termination Letter was not sent to any other Simply Wireless entity.

### IV.    Transition Agreement

On December 7, 2015,[2] the plaintiff, Simply Wireless Miami and Simply Wireless Virginia entered into the Transition Agreement. See Transition Agreement (DE# 33-10 at 2-4, 3/21/16). Simply Wireless Miami and Simply Wireless Virginia are referred to collectively in the Transition Agreement as "Simply Wireless." The Transition

---

[2] The transition agreement was executed by the parties on December 8, 2015, but the effective date of the Transition Agreement was December 7, 2015. See Transition Agreement (DE# 33-10 at 2-3, 3/21/16).

Agreement acknowledged that the plaintiff had sent a Letter of Termination on October

27, 2015. Id. at 2. The Transition Agreement concerned the sale of LG22 handsets with

450 minute, 1 year TracFone airtime plans during a December 9, 2015 show on HSN.

Unlike the parties' prior written agreements, the Transition Agreement specifically

addressed how the PINs would be used in connection with this promotion:

> 2.    Notwithstanding  termination  of the Agreements, **the Parties agree
> to cooperate and work in good faith with each other to ensure
> completion of the HSN show scheduled for December 9, 2015**, which
> also includes sales on subsequent dates through the HSN website and
> until HSN terminates the HSN SKU associated with the 12/9 Show
> (collectively, the "12/9 HSN Show") **involving the promotion and sale of
> a handset and airtime bundle featuring the LG 22 along with a 450
> minute, 1  year TracFone airtime plan (the "LG 22 Bundle")**.
> Notwithstanding anything herein to the contrary, all sales of the LG 22
> Bundle shall cease on or before December 31, 2015. Specifically, the
> Parties agree to take the following steps:
>
> ***
>
> > (b) The Parties agree that **TracFone will provide Simply
> > Wireless with forty thousand (40,000) 450 minute, 1 year
> > TracFone airtime plan PINs to be used by Simply
> > Wireless** exclusively **as part of the LG 22 Bundle sold
> > during the 12/9 HSN Show** by 5:00 PM EST on December
> > 8, 2015 or TracFone will be in breach of this Agreement and
> > the 12/9 HSN Show will be terminated. **The Parties
> > acknowledge and agree that these PINs cannot be sold,
> > distributed, or marketed by Simply Wireless except
> > during the 12/9 HSN Show**.
> >
> > (c) On or before January 5, 2016, Simply Wireless will
> > provide to TracFone a shipping log for each LG 22 handset
> > shipped as a result of the 12/9 HSN Show including the
> > customer name, address, HSN order number, serial number
> > for each handset sold, the order date, and the shipping date.
> > The Parties acknowledge that PINs will not be shipped with
> > orders of the LG 22. **Any PINs provided to Simply
> > Wireless in excess of the number of LG 22 handsets
> > shipped pursuant to the 12/9 HSN Show will be returned**

**to TracFone by January 5, 2016. Simply Wireless agrees that it will not sell, distribute, or market these PINs except during the 12/9 HSN Show as described above. Simply Wireless agrees to pay TracFone $5,000 as liquidated damages for each PIN provided to Simply Wireless for the 12/9 Show (as determined by January 5, 2016) that is not returned to TracFone and is in excess of the number of handsets sold pursuant to the 12/9 Show**. TracFone will designate an individual to accept the return of any PINs. In addition, TracFone will provide an acknowledgment, receipt and release for each PIN returned to TracFone. Should TracFone fail to provide a receipt for the returned PINs, all liquidated damages under this section will be waived by TracFone.

(d) TracFone shall invoice Simply Wireless $68 for each PIN provided in subsection (b) upon the redemption of such PIN and all invoices shall be due and payable by Simply Wireless within forty five (45) days from the invoice date. TracFone shall also provide Simply Wireless with a credit equal to $68 for each 450 minute PIN that is redeemed.

3. **The Parties agree to schedule a meeting at TracFone's headquarters within ten (10) calendar days of the date this agreement is executed to (a) discuss the requirements for completing any other QVC and HSN shows occurring prior to the termination date and (b) reconcile the accounts receivable and monies owed to each party and (c) other items on an agenda to be agreed to by the parties**.

Id. at 2-3 (underlined emphasis in original; bold emphasis added).

## STANDARD OF REVIEW

The defendants move to dismiss with prejudice the SAC pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**I.      Rule 12(b)(1)**

The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1)

motion to dismiss for lack of subject matter jurisdiction. Shriever v. Navient Solutions,

Inc., No. 2:14-cv-596-FtM-38CM, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014)

(citing McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 591 F.3d 1244, 1251

(11th Cir. 2007)). Accordingly, in ruling on a motion to compel arbitration, the Court may

consider matters outside of the four corners of the complaint. Mamani v. Sanchez

Berzain, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009).

"Federal law establishes the enforceability of arbitration agreements, while state

law governs the interpretation and formation of arbitration agreements." Employers Ins.

of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2009) (citing

Perry v. Thomas, 482 U.S. 483 (1987)). "Federal law counsels that questions of

arbitrability, when in doubt, should be resolved in favor of arbitration." Id. (citing Moses

H. Cone Mem'l Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Klay v. All

Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004) (explaining that "it is the role of

courts to rigorously enforce agreements to arbitrate and to construe any doubt in favor

of arbitrability")). The [Federal] Arbitration Act [("FAA")] established that, as a matter of

federal law, any doubts concerning the scope of arbitrable issues should be resolved in

favor of arbitration, whether the problem at hand is the construction of the contract

language itself or an allegation of waiver, delay, or a like defense to arbitrability."

Mercury Constr. Corp., 460 U.S. at 24-25 (footnote omitted).

"Under the [FAA], no party can be compelled to arbitrate unless that party has

entered into an agreement to do so." Id. (citation omitted). State-law principles of

contract law govern the determination of whether an arbitration agreement exists.

Courts have held that non-signatories may be bound to the arbitration agreements of

others based on various theories that arise out of common law principles of contract

and agency law. Lawson v. Life of the South Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011); Bright Metal Specialties, Inc., 251 F.3d at 1322.

To compel arbitration under the FAA, the movant must establish that: 1) a written agreement to arbitrate exists; 2) a nexus to interstate commerce exists; and 3) the arbitration clause covers the claims. Steele v. Santander Consumer USA, Inc., No. 14-60741-CIV-FAM (S.D. Fla. Aug. 15, 2015) (Moreno, J.) (citing Gilmore v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)).

## II.    Rule 12(b)(6)

In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and the attached exhibits. See Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court must accept the non-moving party's well-pled facts as true and construe the complaint in the light most favorable to that party. Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc); St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am., 795 F.2d 948, 953 (11th Cir. 1986)).

To survive a motion to dismiss, the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The issue to be decided is not whether the plaintiff will ultimately prevail, but "whether the [plaintiff] is entitled to offer evidence to support the claims." Swierkiewicz

10

v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232,

236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984)).

## ANALYSIS

**I.     Motion to Compel Arbitration**

The defendants move to compel arbitration and argue that all of the claims

raised in the SAC are arbitrable. The arbitration provision is contained in the October

12, 2011 Agreement between the plaintiff and defendant Simply Wireless Miami. It

states:

> **Arbitration**. **All controversies, disputes or claims arising between the parties to this Agreement or arising out of or relating to the relationship of the parties to this Agreement (together with any counterclaims and disputes under or in connection with other agreements between the Parties) shall be submitted for arbitration** before a single arbitrator in accordance with the Rules of the American Arbitration Association ("AAA"). Such arbitration shall be conducted in Miami, Florida. Any counterclaim not brought within thirty (30) days after receipt of the arbitration notice shall be barred. The single arbitrator shall have the right to include in the award any relief which it deems proper in the circumstances, including money damages (with interest on unpaid amounts from the due date), legal fees and costs in accordance with this Agreement; provided that such arbitrator shall not be entitled to award exemplary, special, punitive, indirect or consequential damages. The award and decision of the arbitrator shall be conclusive and binding on all parties hereto and judgment on the award may be entered in any court of competent jurisdiction. Each party hereto waives any right to contest the validity or enforceability of such award. **This provision shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.** The arbitration shall be the exclusive remedy of the parties to the dispute regarding claims or counterclaims presented to the arbitrator. **Notwithstanding the foregoing, either party has the right to file for a temporary restraining order or other injunctive relief in a court of competent jurisdiction in order to enforce any provision of this Agreement to prevent irreparable harm to the filing party**.

October 12, 2011 Agreement (DE# 51-3 at 9-10, 4/22/16) (emphasis added).

11

Courts consider three factors in addressing a motion to compel arbitration: "(1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." Polvent v. Glob. Fine Arts, Inc., No. 14-21569-CIV, 2014 WL 4672442, at *2 (S.D. Fla. Sept. 18, 2014) (Moreno, J.) (citing Security Servs. v. Skidata, Inc., 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009)).

The undersigned finds that all three factors are met with respect to the claims asserted against defendant Simply Wireless Miami. The parties to the agreement containing the arbitration provision are the plaintiff and Simply Wireless Miami. The broad language of the arbitration provision governs "[a]ll controversies, disputes or claims arising between the parties to this Agreement or arising out of or relating to the relationship of the parties to this Agreement . . . ." The SAC asserts three causes of action against Simply Wireless Miami: fraud in the inducement of the Transition Agreement (Count 5), breach of the Transition Agreement (Count 6) and unjust enrichment in violation of Florida common law and the Transition Agreement (Count 7). All three causes of action fall within the broad scope of the arbitration provision. There is no record evidence that either party waived the right to arbitration. Accordingly, Counts 5 through 7 should be submitted to arbitration as to Simply Wireless Miami.

The defendants argue the arbitration provision should also apply to the non-signatory defendants, the Simply Wireless Virginia Entities. The defendants argue that under the doctrine of equitable estoppel, the Court could bind the non-signatory defendants to the arbitration provision. "Whether a nonparty to an arbitration agreement may enforce the agreement depends on the applicable state law regarding the

12

enforceability of contracts." Wiles v. Palm Springs Grill, LLC, No. 15-CV-81597-KAM, 2016 WL 4248315, at *3 (S.D. Fla. Aug. 11, 2016) (citations omitted). The October 12, 2011 Agreement containing the arbitration provision states that it is governed by Florida law. See October 12, 2011 Agreement (DE# 51-3 at 9, 4/22/16). "Florida law recognizes the doctrine of equitable estoppel, under which a nonparty to a contract containing an arbitration clause may compel arbitration where a party to the contract **raises allegations of substantially interdependent and concerted misconduct by the nonparty and another party to the contract**." Id. (emphasis added; citations omitted).[3] The only allegations in the Second Amended Complaint asserted against the signatory to the October 12, 2011 Agreement (Simply Wireless Miami) are Counts 5 through 7 which relate to the Transition Agreement. These counts relate to the "Defendants agreement to schedule a meeting with TracFone to discuss various outstanding issues within ten days of the [Transition A]greement's Effective Date." SAC at ¶ 145; see also id. at ¶¶ 160-163, 168-170. In Counts 5 through 7, the SAC does not differentiate between the actions of each defendant and instead refers to all of the defendants collectively. Thus, the misconduct alleged in Counts 5 through 7 is substantially interdependent and concerted misconduct by both the signatory defendant and the non-signatory defendants. Therefore the undersigned concludes that the doctrine of equitable estoppel binds all of the defendants to the arbitration provision with respect to

---

[3] Additionally, "[a] non-signatory to an arbitration agreement may compel arbitration when the allegations against him are inextricably intertwined with or mirror those against a signatory . . . ." Dimattina Holdings, LLC v. Steri-Clean, Inc., No. 16-CIV-61084, 2016 WL 4272373, at *5 (S.D. Fla. July 18, 2016). Here, the allegations against all three defendants are identical in Counts 5 through 7.

Counts 5 through 7 of the SAC. The doctrine of equitable estoppel does not bind the non-signatory defendants, Simply Wireless Virginia and Mobile Now, to arbitration with respect to the remaining causes of action in the Second Amended Complaint because there are no allegations in the remaining counts of the SAC that "raise[ ] allegations of substantially interdependent and concerted misconduct by [Simply Wireless Virginia and Mobile Now] and [Simply Wireless Miami]." Wiles, 2016 WL 4248315, at *3.

For these reasons, the undersigned concludes that equitable estoppel is applicable to bind the non-signatory defendants (Simply Wireless Virginia and Mobile Now) to arbitration with respect to Counts 5 through 7 of the SAC only. The defendants' motion to compel arbitration should be **GRANTED in part and DENIED in part**. Counts 5 through 7 should be submitted to arbitration as to all defendants.

The undersigned will now address the defendants' Rule 12(b)(6) attack on the remaining causes of action alleged in the SAC.

**II.     Motion to Dismiss for Failure to State a Claim**

The defendants also move to dismiss Counts 1 through 3 and 5 through 12 of the SAC for failure to state a claim under Rule 12(b)(6). The defendants' arguments are addressed in turn.

**a.     Counts 1 through 3 alleging violations of the CFAA**

Counts 1 through 3 of the SAC assert causes of action for unauthorized access to a protected computer in violation of 18 U.S.C. § 1030 (A)(5)(C) of the CFAA (Count 1); unauthorized access to a protected computer with intent to defraud in violation of 18 U.S.C. § 1030 (A)(4) of the CFAA (Count 2) and knowingly trafficking in password

14

information in violation of 18 U.S.C. § 1030 (A)(6) of the CFAA (Count 3).

The defendants move to dismiss Counts 1 and 2 of the SAC on the ground that the plaintiff has failed to plead that the **Simply Wireless Virginia Entities** accessed the plaintiff's computers either without authorization (Count 1) or in a manner that exceeded authorization (Count 2). See Motion (DE# 51 at 19, 4/22/16). The defendants note that the SAC alleges that the **customers** were the ones who accessed the plaintiff's computers to activate the service. Id. In other words, there are no allegations of any direct access to the plaintiff's computers by the Simply Wireless Virginia Entities. The defendants further maintain that "there is no civil liability for 'aiding and abetting' under the CFAA" and "[w]ithout alleging directly that Defendants themselves improperly accessed the computers, TracFone has not properly alleged a claim under the CFAA." Id. at 21.

The defendants also argue that all three CFAA claims (Counts 1 through 3) fail to state a claim because the plaintiff cannot allege that Simply Wireless Virginia Entities' access to the plaintiff's computers was not authorized when the plaintiff provided Simply Wireless Virginia Entities with the PINs. See Motion (DE# 51 at 22, 4/22/16). The defendants further note that the written agreements between the parties did not prohibit the defendants from selling the PINs separately to customers[4] and the customers who obtained PINs as part of a handset bundle could still use those PINs to add minutes to other TracFone handsets. Id. Finally, the defendants argue that Counts

---

[4] The December 7, 2015 Transition Agreement specifically required PINs to be sold as part of a bundle sold during the 12/9 HSN Show and prohibited the PINs from being "sold, distributed, or marketed by Simply Wireless except during the 12/9 HSN Show."  See December 7, 2015 Transition Agreement (DE# 33-10 at 2, 3/21/16).

1 through 3 sound in fraud and therefore must be pled with particularity.[5]

The plaintiff has pled a cause of action for unauthorized access to a protected computer in violation of section 1030(A)(5)(C) of the CFAA (Count 1) and unauthorized access to a protected computer with intent to defraud in violation of section 1030(A)(4) of the CFAA (Count 2). There are no allegations that the Simply Wireless Virginia Entities directly accessed the plaintiff's computers. Instead, customers who purchased PINs from the Simply Wireless Virginia Entities were the ones who directly accessed the plaintiff's computers. Furthermore, there are no allegations that the customers knew they were accessing the plaintiff's computers without authorization or in excess of the authorized access. Nonetheless, direct access to a computer is not required and a defendant can be held liable under the CFAA under an aiding and abetting theory of liability. See Synthes, Inc. v. Emerge Med., Inc., No. CIV.A. 11-1566, 2012 WL 4205476, at *20 (E.D. Pa. Sept. 19, 2012) (denying motion to dismiss CFAA claim where "[t]he allegations explicitly state[d] that Defendant Powell accessed Plaintiff's computer systems, through others, without authorization and that [Plaintiff] suffered a cognizable loss."). Here, the SAC alleges that the Simply Wireless Virginia Entities

_____

[5] It is not clear whether Rule 9 applies to CFAA claims. At least one court has stated that it does not. See, e.g., P.C. of Yonkers, Inc. v. Celebrations!, 2007 WL 708978, *6 (D.N.J. Mar. 5, 2007). Nonetheless, the undersigned finds that the CFAA claims as pled in the SAC satisfy the requirements of Rule 9. "Rule 9(b) is satisfied if the complaint provide[s] a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." Llano Funding Grp., LLC v. Cassidy, No. 14-CIV-62863, 2015 WL 4698407, at *4 (S.D. Fla. Aug. 6, 2015) (citations and internal quotation marks omitted; alteration in original). Here, the allegations in the SAC provide the defendants with fair notice of the nature of the fraud alleged in the SAC.

16

provided PINs to customers which allowed them to access the plaintiff's computers. These consumers would not have been able to access the plaintiff's computers without Simply Wireless Virginia Entities' act of providing consumers with PINs. The fact that the consumers themselves were unaware that their actions were unauthorized is immaterial because the SAC alleges that the Simply Wireless Virginia Entities knew that the sale of the unbundled PINs was not authorized by the agreement between the parties. Therefore, the plaintiff has pled the unauthorized or in excess of authorization elements of Counts 1 and 2.

The plaintiff has also pled a cause of action for knowingly trafficking in password information in violation of section 1030(A)(6) (Count 3). Unlike Counts 1 and 2, access to the plaintiff's computers is not an element of Count 3. Rather, in order to state a cause of action under Count 3, the plaintiff must plead: "(1) the Defendant knowingly; (2) trafficked in; (3) a computer password; (4) in a manner that affects interstate commerce." T-Mobile USA, Inc. v. Terry, 862 F. Supp. 2d 1121, 1131 (W.D. Wash. 2012). The SAC alleges that:

> 124. The promotional Service PINs were given to the Simply Wireless Virginia Entities at no additional charge as part of a product promotion whereby the Simply Wireless Virginia Entities sold TracFone Devices that came pre-authorized with TracFone Service. As part of the promotion, the Simply Wireless Virginia Entities were required to input the Service PINs TracFone provided to it at no cost into TracFone's authorization system in order to apply the service to the phones sold as part of the promotion.

> 125. Instead of using the promotional Service PINs as part of the promotional Device/Service Bundle, the Simply Wireless Virginia Entities resold those PINs directly to end-user consumers for profit.

> 126. The Simply Wireless Virginia Entities knowingly sold the promotional PINs to end-user consumers for profit, which TracFone provided at no charge, in violation of the parties' understanding that the promotional

Service PINs were only to be bundled with TracFone Devices.

SAC (DE# 33 at ¶¶ 124-126). The SAC further alleges that the PINs constituted

password information under section 1030(a)(6) of the CFAA and that "[t]he Simply

Wireless Virginia Entities' activities substantially affect[ed] interstate commerce and

communication in that the TracFone Service [wa]s conducted over the Internet and

throughout the United States, and TracFone's computer system and

telecommunications network are used in and affect interstate commerce and

communication." Id. at ¶¶ 120, 129. Based on these factual allegations, the plaintiff has

stated a cause of action for knowingly trafficking in password information in violation of

section 1030(A)(6) (Count 3).

The defendants assert that there was no prohibition that the PINs be sold

separately from the handsets: "TracFone cannot plausibly establish that

there were any restrictions on the use of Airtime PINs provided or sold to Simply

Wireless – indeed, there were no such restrictions in the agreements nor in the invoices

and statements." Reply (DE# 58 at 12). Whether the Simply Wireless Virginia Entities

were allowed to sell the PINs unbundled for TracFone handsets goes to the heart of

this litigation. Here, Count 3 alleges that the Simply Wireless Virginia Entities sold the

PINs "in violation of the **parties' understanding** that the . . .  PINs were only to be

bundled with TracFone Devices." See SAC at ¶126 (emphasis added). At this juncture

in the proceedings, the Court should allow the plaintiff to proceed with this cause of

action as pled.

The defendants also seek to dismiss the plaintiff's claims for injunctive relief. The

SAC seeks injunctive relief with respect to the CFAA claims (Counts 1 through 3) only.

18

The defendants argue that in reality, the plaintiff's claims for injunctive relief are claims for damages. See Motion (DE# 51 at 24-25). The plaintiff correctly points out that the CFAA provides for both injunctive relief and damages. See Response (DE# 55 at 13) (citing 18 U.S.C. § 1030(g)). In their reply, the defendants assert that the plaintiff has merely pled in a conclusory fashion that it suffered irreparable harm. See Reply (DE# 58 at 12) (noting that the SAC contains "no factual allegation that the sale by Simply Wireless of Airtime PINs to third parties causes damage to the 'quality or service' of TracFone's products").

"[A] party may pursue claims for both money damages and injunctive relief where it is alleged that defendant is likely to continue its tortious activities." Burstein v. First Penn-Pacific Life Ins. Co., No. 01-985-CIV, 2002 WL 34186960, at *8 (S.D. Fla. Feb. 11, 2002). Here, the SAC alleges that Simply Wireless Virginia Entities' actions will continue to cause the plaintiff to suffer injury. SAC at ¶¶ 98, 112, 130. Accordingly, the plaintiff's claims for injunctive relief should not be dismissed on this ground.

In sum, the Court should **DENY** the motion to dismiss with respect to Counts 1 through 3 of the SAC.

### b. Counts 5 through 7 alleging fraudulent inducement, breach of contract (12/7/15 Transition Agreement) and unjust enrichment

The defendants also seek to dismiss Counts 5 through 7: fraud in the inducement of the Transition Agreement in violation of Florida common law (Count 5); breach of Transition Agreement in violation of Florida common law (Count 6) and unjust enrichment (also known as claim for contract implied at law) in violation of Florida common law Transition Agreement (Count 7).

19

The Court should compel the parties to arbitration with respect to the causes of action asserted in Counts 5 through 7 for the reasons stated above. Accordingly, the defendants' motion to dismiss Counts 5 through 7 for failure to state a claim should be **DENIED as moot**.

        **c.**        **Counts 8 and 9 alleging Lanham Act violations**

The SAC alleges causes of action against defendant Simply Wireless Virginia for federal trademark infringement in violation of 15 U.S.C. § 1114, Section 32 of the Lanham Act (Count 8) and federal false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(A), Section 43(A) of the Lanham Act (Count 9) based on Simply Wireless Virginia's unauthorized use of the plaintiff's marks after the termination of the parties' business relationship.

The defendants argue that Counts 8 and 9 must be dismissed under the First Sale Doctrine. The First Sale Doctrine provides that "[o]nce a trademark owner sells his product, the buyer ordinarily may resell the product under the original mark without incurring any trademark liability." Allison v. Vintage Sports Plaques, 136 F.3d 1443, 1448 (11th Cir. 1998) (quoting NEC Electronics v. CAL Circuit ABCO, 810 F.2d 1506, 1509 (9th Cir.1987)). The plaintiff argues that the First Sale Doctrine does not protect resellers who use marks to give the false impression that they are favored or authorized dealers of a product. In their reply, the defendants argue that they are still entitled to the dismissal of Counts 8 and 9 because the SAC makes no allegations that Simply Wireless Virginia's resale of the PINs confused consumers about the origin of the goods or that PINs sold by Simply Wireless Virginia were materially different from the

same products sold by the plaintiff.

Count 8 asserts a cause of action for federal trademark infringement. "In order to prevail on a claim of trademark infringement, TracFone must demonstrate that Defendant (1) used the Trademark in commerce (2) without Plaintiff's consent and (3) the unauthorized use was likely to deceive, cause confusion, or result in mistake." TracFone Wireless, Inc. v. Adams, 98 F. Supp. 3d 1243, 1253 (S.D. Fla. 2015) (citations and internal quotation marks omitted). Count 9 asserts a cause of action for federal false designation of origin and unfair competition. The elements of this cause of action are: "(1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647-48 (11th Cir. 2007) (internal quotation marks omitted).

With respect to the confusion element, Count 8 alleges that:

177. **Simply Wireless Virginia's use of the TracFone Marks in connection with the promotion and sales of its competing telecommunications goods and services has caused – and will continue to cause – a likelihood of confusion, mistake, and deception as to the source or origin of Simply Wireless Virginia's products and services**. Both the trade and consuming public are likely to believe that Simply Wireless Virginia's goods and services are sponsored, approved, or licensed by TracFone, or that it is affiliated, associated, or otherwise legitimately connected to TracFone.

***

179. As a result of Simply Wireless Virginia's infringement, as described above, **the trade and consuming public is likely to be confused and deceived as to the source, sponsorship, affiliation, or approval, of Simply Wireless Virginia's goods and services currently marketed under the TracFone Marks**.

21

SAC (DE# 33 at ¶¶ 177, 179) (emphasis added). Count 9 alleges that:

> 186. Simply Wireless Virginia's conduct, as described above, constitutes use of a false designation of origin, and/or a false or misleading description or representation of fact on or in connection with its goods and services which **is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Simply Wireless Virginia with TracFone, and/or as to the origin, sponsorship, or approval of Simply Wireless Virginia's goods** and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Id. at ¶ 186 (emphasis added). "Although detailed factual allegations are not required, Plaintiff must allege sufficient facts, not mere conclusory allegations, in a manner that comports with the Federal Rules of Civil Procedure." Genesis NYC Enterprises, Inc. v. JAI Grp., SA, No. 1:15-CV-23877-KMM, 2016 WL 1588397, at *4 (S.D. Fla. Apr. 20, 2016) (citing Twombly, 550 U.S. at 557). Here, the SAC does not allege facts -- beyond conclusory allegations -- demonstrating a likelihood of confusion. Counts 8 and 9 also fail under the First Sale Doctrine. Although the plaintiff argues that the First Sale Doctrine does not protect resellers who use marks to give the false impression that they are favored or authorized dealers of a product, the plaintiff does not plead facts in the SAC establishing how Simply Wireless Virginia used the plaintiff's marks to give the false impression that Simply Wireless Virginia was a favored or authorized dealer of the plaintiff's products.

The Court should **DISMISS without prejudice** Counts 8 and 9. The SAC has not pled facts sufficient to overcome the First Sale Doctrine. Additionally, the SAC's conclusory allegations are insufficient to meet the pleading standards of Iqbal and Twombly.

22

**d.      Counts 10 and 11 alleging breach of 11/11/07 Agreement & Implied Covenant of Good Faith and Fair Dealing**

In Counts 10 and 11, the plaintiff asserts a cause of action for breach of the November 11, 2007 Agreement (Count 10) and breach of the implied covenant of good faith and fair dealing in violation of Florida common law with respect to the November 11, 2007 Agreement (Count 11). Specifically, the plaintiff faults the Simply Wireless Virginia Entities for selling PINs to customers that were not bundled with the TracFone Devices. However, Counts 10 and 11 do not cite to any provisions in the November 11, 2007 Agreement that prohibited the Simply Wireless Virginia Entities from selling unbundled PINs.

The Court should dismiss Counts 10 and 11 of the SAC. There are no express provisions in the November 11, 2007 Agreement that prohibits the Simply Wireless Virginia Entities from selling PINs separate from TracFone Devices. As such, the plaintiff's claim for breach of the November 11, 2007 Agreement should be dismissed. For this same reason, the plaintiff's claim for breach of implied covenant of good faith and fair dealing should also be dismissed. See Regency of Palm Beach, Inc. v. QBE Ins. Corp., No. 08-81442-CIV, 2009 WL 2729954, at *4 (S.D. Fla. Aug. 25, 2009) (noting that "[u]nder Florida law, [a claimant]'s failure to identify an express contractual provision that has been breached dooms its claim for breach of the implied covenant."). Accordingly, the Court should **DISMISS Counts 10 and 11 without prejudice**.

### e.      Count 12 alleging accounting

In Count 12, the SAC asserts a claim for accounting. The defendants argue that this count must be dismissed because the plaintiff has failed to allege that a fiduciary duty exists between the plaintiff and the Simply Wireless Virginia Entities and makes no allegations that a legal remedy such as monetary damages would be inadequate.

"A party seeking an equitable accounting must show the existence of a fiduciary relationship **or** a complex transaction and must demonstrate the inadequacy of the legal remedy." Staup v. Wachovia Bank, N.A., No. 08-60359-CIV-COHN, 2008 WL 2598005, at *4 (S.D. Fla. June 27, 2008) (emphasis added) (citing Kee v. National Reserve Life Ins. Co., 918 F.2d 1538, 1540 (11th Cir. 1990)). The SAC alleges a complex transaction between the parties involving "hundreds of thousands of various Service PINs and TracFone Devices to the Simply Wireless Virginia Entities, including promotional Service PINs" and provides an explanation why a legal remedy would be inadequate: "[t]he damages at issue in this litigation are extensive and complex, and, as such, TracFone's remedy at law is as not as full, adequate, and expeditious as it is at equity." See SAC at ¶¶ 204, 208. As such, the plaintiff has pled a cause of action for accounting and the Court should **DENY** the motion to dismiss with respect to Count 12.

### RECOMMENDATION

In accordance with the foregoing, the undersigned respectfully recommends that the Defendants Simply Wireless, Inc., Mobile Now, Inc., and Simply Wireless of Miami, Inc.'s, Motion to Dismiss Second Amended Complaint or, in the Alternative, Motion to Compel Arbitration (DE# 51, 4/22/16) be **GRANTED in part and DENIED in part**. The

Court should submit Counts 5 through 7 to arbitration as to all defendants.[6] The Court should dismiss without prejudice Counts 8 through 11. The Court should deny the motion to dismiss with respect to Counts 1 through 3 and 12.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **6th** day of September, 2016.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Moreno
All Counsel of Record

---

[6] At the September 1, 2016 hearing, the plaintiff represented that if the Court is inclined to submit Counts 5 through 7 to arbitration, the plaintiff would voluntarily dismiss those counts.

25